[No. 20683. In Bank. — May 20, 1891.]

THE PEOPLE, RESPONDENT, *v.* J. W. WALLACE, APPELLANT.

CRIMINAL LAW — HOMICIDE — EVIDENCE — IMMORAL CONDUCT OF ACCUSED — PREJUDICIAL ERROR. — Upon the trial of a defendant charged with murder, the admission of the irrelevant testimony of a girl called as a witness for the prosecution, designed to show that the accused had asked her to live with him in a state of immorality, which she had refused to do, is prejudically erroneous, as calculated to present the accused before the jury as a low and degraded character.

ID. — DECLARATION OF WITNESS AT TIME OF HOMICIDE — HEARSAY. — A question as to whether a witness for the prosecution, after leaving the accused, and while holding a conversation with a third party, heard a pistol-shot, and exclaimed immediately that defendant had killed the deceased, is irrelevant and incompetent; and if the witness denies such declaration, it is incompetent to prove the declaration by another witness, or to prove that he made any remark indicating that he heard the shot that killed the deceased.

ID. — QUESTION BY JUROR — WITHDRAWAL OF REPEATED OBJECTION — STRIKING OUT HEARSAY EVIDENCE — PREMEDITATION OF HOMICIDE. — After repeated rulings by the court, upon objection of the defendant, that a declaration made by a witness at the time of the homicide, to another person, was incompetent, if a juror asks such other person, as a witness, for the language of the declaration, which the counsel for the prosecution still insists shall be stated, the fact that counsel for the accused withdraws the objection under those circumstances, in deference to the with of the juror, should not prelude the court from striking out the answer, on the motion of defendant, as hearsay and incompetent, if the second witness answers that the first witness had declared to him that defendant told him he had sent a messenger for a pistol, and would shoot the deceased.

ID. — DISCRETION OF COURT — STRIKING OUT ILLEGAL EVIDENCE. — A motion to strike out evidence not previously objected to is addressed to the sound legal discretion of the court, and may be properly denied if made on account of the absence of preliminary proof, or is addressed to evidence of an irrelevant or immaterial fact, but should be granted when the objection is not technical, but substantial, and the justice of the case required the rejection of incompetent hearsay evidence or inherently illegal testimony as to a material fact.

ID. — INSTRUCTION AS TO HEARSAY — ERROR NOT CURED. — An error in admitting and refusing to strike out illegal hearsay evidence, as to the declaration of a witness respecting the premeditation of the homicide by the defendant, is not cured by an instruction of the court to the jury, to the effect that the defendant is not bound by anything the witness may have said, not in the defendant's presence and hearing.

ID. — INSTRUCTION — CREDIBILITY OF WITNESSES — INMATES OF LOW THEATER — PROVINCE OF JURY. — Where certain witnesses were inmates of a low theater, where actresses were employed to serve drinks, attend the boxes, and solicit patronage for the bar, it is error to instruct the jury that as the law allows and licenses such places, "it is submitted whether it is justifiable to charge its inmates with want of veracity, unless accompanied with other proof." It is for the jury to determine whether or not such fact ought to influence them in passing upon the credibility of the witnesses.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Robert Ferral*, and *Samuel M. Shortridge*, for Appellant.

The court erred in permitting the prosecuting attorney to interrogate the witness Lulu Vernon as to her chastity and her relations with the defendant, and in thereby permitting an attack upon defendant's chastity and moral character. (*People* v. *Mullings*, 83 Cal. 138; 17 Am. St. Rep. 223; *People* v. *Fair*, 43 Cal. 137; *People* v. *Dye*, 75 Cal. 112; *Sharon* v. *Sharon*, 79 Cal. 673; Code Civ. Proc., sec. 2051.) The court erred in its rulings upon the testimony of witnesses Moore and Guthrie, admitting Moore's testimony and permitting Guthrie to contradict it, and in tolerating the course of the prosecuting attorney in their examination. (*Kohler* v.

*Wells, Fargo & Co.*, 26 Cal. 606; *People* v. *Dye*, 75 Cal. 112; *People* v. *Lee Chuck*, 78 Cal. 328, 329; *People* v. *Mullings*, 85 Cal. 138; 17 Am. St. Rep. 223; *Gale* v. *People*, 26 Mich. 161; *People* v. *Williams*, 3 Abb. App. 350; *People* v. *Irwin*, 77 Cal. 501.) The court erred in the following charge to the jury: "In this connection, I think it proper to say the law allows and licenses this class of theaters. It allows and licenses the sale of liquor therein. While this state of things exists, it is submitted whether, by the mere keeping of such a place, it is justifiable to charge its inmates with want of veracity, unless accompanied with other proof." (Hayne on New Trial and Appeal, sec. 121, pp. 338–341; *People* v. *Williams*, 17 Cal. 146; *People* v. *Eckert*, 16 Cal. 113; *McMinn* v. *Whelan*, 27 Cal. 319; *People* v. *Barry*, 31 Cal. 358; *People* v. *Fong Ching*, 78 Cal. 169.)

*Attorney-General Johnson, Attorney-General Hart,* and *P. F. Dunne,* for Respondent.

Evidence of lack of chastity is admissible to impeach the testimony of a female witness. (*State* v. *Shields*, 13 Mo. 236; 53 Am. Dec. 147; *State* v. *Grant*, 79 Mo. 113; 49 Am. Rep. 218; *State* v. *Rider*, 95 Mo. 474; *Evans* v. *Smith*, 5 T. B. Mon. 363; 17 Am. Dec. 74; *Ind. R. R. Co.* v. *Anthony*, 43 Ind. 183; *Commonwealth* v. *Murphy*, 14 Mass. 387; *State* v. *Froelick*, 70 Iowa, 216; 2 Taylor on Evidence, secs. 1082, 1083; *Shepard* v. *Parker*, 36 N. Y. 517.)

DE HAVEN, J. — The defendant was convicted of the crime of murder in the first degree for the killing of one Albert H. Rice, and adjudged to suffer the penalty of death. From this judgment, and an order refusing him a new trial, this appeal is taken.

The homicide was committed at a place known as the Élite Theater, in San Francisco. The deceased was the proprietor of this resort, and the defendant was employed

there for the purpose of keeping order and suppressing disturbances. This so-called "theater" is spoken of by one of the witnesses as a cellar, and was denominated by counsel for the appellant, during the trial, as a dive, and its character is sufficiently disclosed by the testimony, which shows that it is below the street, and a part of the duty of the "actresses" there employed is to serve drinks, attend the "boxes," and solicit patronage for the bar.

Upon the trial, Lulu Vernon, an "actress" in this "theater," was a witness for the people, and was permitted to testify that defendant knocked at her bedroom door on the day of the shooting, and that she did not admit him. The attorney for the people then asked her: "Since you have been working at the Élite Theater, has this man Wallace asked you to be his girl?"

The question was objected to by appellant, whereupon the attorney for the people made this statement: "If your honor please, this defendant has had his counsel ask this woman if she has been leading a decent and virtuous life; and I want to show what endeavors this defendant has made to induce her to live with him."

The objection of the defendant was overruled, and the witness answered: "Yes; he asked me to be his girl." She further said she told him, No; that she "did n't wish any fellow."

The admission of this testimony was erroneous. It was not relevant to any issue involved in the case, and was clearly calculated to present the appellant before the jury as a low and degraded character.

It may be that there are those who look with some indifference upon the moral delinquencies of men in their social relations with the other sex, if such conduct is not too flagrant and notorious. But even if this should be assumed as the fact, it would not follow that this evidence was not prejudicial, as its object, its declared purpose

and effect, was to show that appellant had proposed to
"live" with this woman in a state of shameless immo-
rality.   One of the attorneys for the people concedes
this in his brief.   He says: " The whole testimony, at
full length, amounts to one single verbal request by him
that she should take up with him the relations which
are common to people of their class and surroundings,
and which make no greater figure in our estimation of
such people than would marriage among people of a
different social plane, and whose lives are ordered more
in accordance with conventionalities."

The occupation of this witness, all of the surroundings
and character of the so-called "theater" in which she
was employed, were fully disclosed by the evidence, and
the proposition to " live" with her, and she to become his
" girl," looked to a relation which need not be charac-
terized here, but which the jurors, as men of ordinary
observation, must be presumed to have fully understood.
But one inference could be drawn from this testimony,
and that most prejudicial to the appellant, in the minds
of men of average morality.

The evidence having only this tendency, and being
wholly irrelevant, should not have appeared in the case.
(*People* v. *Fair*, 43 Cal. 137; *People* v. *Dye*, 75 Cal. 112;
*People* v. *Tiley*, 84 Cal. 651.)

2. One Moore was called as a witness for the people,
in rebuttal, and referring to the time of the homicide,
and a restaurant near the Élite Theater, this question
was asked him: " Between five minutes to eight and five
minutes past eight, and while you were in the restaurant
after you had left Wallace and had a conversation with
him, in which he mentioned Rice's name to you, did you
not hear a pistol-shot, and exclaim immediately, ' Wallace
has killed Rice' ? "   The witness answered, " No."

This question called for irrelevant and incompetent
testimony, but, as it was answered in the negative, of

itself did no harm; but, afterwards, one Guthrie, the keeper of the restaurant in which the remark was alleged to have been made, was placed upon the witness-stand by the prosecution, and asked: "After the firing of the shots, did this man Moore say to you that Wallace had killed Rice?" The court sustained an objection to this, upon the ground that the matter was hearsay, and inadmissible under any circumstances. This ruling was clearly right. The incompetency of the evidence called for by the question is glaring, but notwithstanding this, and the ruling of the court asserting its inadmissibility, the question was immediately repeated by the attorney conducting the prosecution, and the defendant was again compelled to appeal to the court. The court finally ruled, notwithstanding the objection of defendant, that the witness might answer directly whether Moore did or did not make any remark at the time and place referred to, indicating that he heard the shots which killed Rice, but must not repeat the language used, to which defendant duly excepted. In this ruling the court erred, as it was immaterial whether Moore heard the shots or not; and the answer of the witness, that Moore did say something, taken in connection with the direct question as to the language used, which was not allowed, could hardly fail to suggest to the jury the nature of the remark made, and was little less damaging to the defendant than if such rejected question had been answered in the affirmative.

At this point different jurors began to more particularly question the witness about the circumstances, and finally one juror said: "We have not heard yet what the language was that this Moore used at the time." Whereupon the attorney for the people, instead of answering that such testimony was not, under the rulings of the court, proper to be laid before the jury, said: "That is what we would like to have, *and we do not object to letting it go in.*"

Objection was made by the attorney for appellant, and the court once more ruled the testimony inadmissible.

In the face of these objections, and in contempt of the repeated rulings of the court, the counsel conducting the prosecution again announced: " I would like to have the juror's question answered as to what Moore said."

Thereupon, counsel for appellant withdrew his objection, and the witness answered: ". . . . He said, ' No; I will bet you it was Wallace shot Rice, the proprietor,' and I said to him, 'No; it was two of the women that were shot.' He says, ' The reason that I think it was him was this, that I was with him this afternoon, and that he had sent a messenger-boy for his pistol, and said he would shoot him.'"

That this testimony was merely hearsay, and therefore incompetent, is plain; and that it bore directly upon a most vital point in the case, namely, whether the killing of Rice had been contemplated by appellant, and was the result of a fixed purpose after deliberate premeditation, is also apparent. The rule which forbids the introduction of hearsay evidence is one which is so generally understood and closely adhered to, that it is seldom that its admission is assigned as error in an appellate court. But in the case of *People* v. *Jacobs,* 49 Cal. 384, the trial court admitted evidence similar to that which we are now considering, and it was there held that when a witness is called by a party, and does not testify as expected, nor give testimony against him, the party calling him is not permitted to prove that the witness had made, at some other time, the statement to which he had refused to testify; for to do so would enable the party to get the naked declarations of the witness before the jury as independent evidence, as was done in the present case. Here the alleged declarations of the witness Moore, not made under oath, or in the presence of appellant, were given to the jury as evidence in the case to prove that the killing of Rice was the

result of a preconceived design upon the part of appellant. The character of this testimony cannot be disguised by calling it an impeachment of the witness Moore. Viewed in every light, and reduced to its last analysis, it was hearsay; simply, one witness testifying that he heard another person say that the defendant had told such person he intended to kill the deceased.

After the reception of this testimony the appellant moved that it be stricken out. The motion was denied, the court giving as a reason for its action that the evidence was admitted without objection. It has undoubtedly been held in many cases that it is a sufficient answer to such a motion that the evidence was received without objection. The rule is one of practice, and is applied in order to save the time of the court, which otherwise would be uselessly consumed in listening to testimony and then striking it out, and also to prevent a party from obtaining an advantage by deliberately consenting that a witness may give evidence upon a certain point with the expectation or belief that it may be favorable to him, and then having it excluded when the evidence is not satisfactory. Under its operation, when, without objection, secondary evidence has been received, where primary should have been produced, or evidence of confessions, or dying declarations, or of experts, without proof of the preliminary facts required by law, or when competent evidence of a merely irrelevant or immaterial fact has been allowed by consent, the trial court may properly deny a motion to strike out such evidence thus admitted. In such cases it is held that a party has no legal right to complain, if the court, in the exercise of its discretion, retains the evidence. The motion is, however, addressed to the sound legal discretion of the trial court, and when the objection to the evidence is not merely technical, as in the instances above given, but is substantial, and it also appears to the court that to do justice in the particular case before it

requires such action, the subsequent motion to strike out should be 'allowed. Indeed, a court may properly refuse to receive, even with the consent of the parties, evidence which in law is not recognized as fit and appropriate. In *Monfort* v. *Rowland*, 38 N. J. Eq. 185, the court declare: " The court is not bound to accept anything but legal evidence, and should seldom, if ever, allow its judgment to be controlled by anything else. The parties are at liberty to make such agreements respecting the evidence as they may see fit, but the court is not bound by them. The court may recognize them if it thinks proper to do so, but it should in no case sanction them if they are against the policy of the law, or dangerous to the safe administration of the law."

In the case of *Parker* v. *Smith*, 4 Cal. 105, it was held that the court might of its own motion strike out and instruct the jury to disregard the illegal testimony of a witness, although given without objection from the opposing party. The court there say: " On the trial of this cause one of the witnesses deposed to a state of facts which upon his cross-examination proved to be hearsay evidence, and wholly inadmissible, whereupon the court ordered the testimony of the witness to be stricken out, and instructed the jury to disregard it. The appellant assigns this as error,— 1. Because the testimony was not objected to *in limine* by the respondent; and 2. Because the court of its own motion ruled it out. . . . . The right of the court to interfere is also undoubted. The testimony was clearly improper. The duty of the court was not confined to passing upon such portions of the testimony as may be excepted to, but extends to the preservation of the rights of litigants, and a proper disposition of the matters in controversy."

If this is the right and duty of the court in a civil case, with much greater reason can it be said that in a trial for murder, in which the life of a defendant is involved, the court ought not to refuse to strike out testimony

which is inherently illegal and incompetent, and which, under well-settled rules of law, cannot be received as legal proof of any fact.

We think the court should have excluded this incompetent evidence upon defendant's motion. The court ought to have done so, not only because of the nature of the evidence, but because the defendant had more than once objected to its introduction, when the counsel conducting the case for the people was endeavoring by repeated questions to get it before the jury, in open defiance of the rulings of the court, and the objection to it was only yielded in deference to what seemed to be the wish of a juror to hear the evidence. But the court ought not to have permitted the defendant to be placed in this position, and should have enforced its previous rulings on its own motion. But whether it did this or not, the testimony should have been excluded, upon the subsequent motion of the defendant.

3. The court afterwards, in its charge to the jury, gave this instruction: " Some evidence has been admitted of a statement made by one Moore, at the restaurant of a Mr. Guthrie, immediately after the shooting; but in this connection I say to you that the defendant at the bar is not bound by anything Moore may have said, not in his presence and hearing."

This was not equivalent to excluding this evidence from the consideration of the jury. It was not a plain and unequivocal direction to them to wholly disregard it as illegal, and not proper to be considered at all, and therefore cannot be regarded as obviating the error in the previous ruling of the court.

4. The court erred in charging the jury: " In this connection, I think it proper to say the law allows and licenses this class of theaters. It allows and licenses the sale of liquor therein. While this state of things exists, it is submitted whether, by the mere keeping of such a place, it is justifiable to charge its inmates

with want of veracity, unless accompanied with other proof."

In this instruction the court very clearly intimates that, in its opinion, the witnesses referred to had been unjustly assailed, and that any argument against their credibility, based upon the fact that they were inmates of this "theater," was not justifiable. But whether such an argument was justifiable, that is, whether it ought to influence the judgment of the jury in passing upon the credibility of these witnesses, was a question solely for the consideration of the jury, and the instruction quoted was an invasion of their province, and erroneous. (*Com.* v. *Barry,* 9 Allen, 279; *People* v. *Fong Ching,* 78 Cal. 169.)

Jurors must be left to determine for themselves whether an attack upon the credibility or truthfulness of a witness is sustained by the facts before them, and whether an argument, addressed to them for the purpose of convincing their judgment upon the point, is one which ought, in fairness and justice, to have been urged; and no matter how flimsy, unreasonable, or unjust such attack may appear to him, the judge is not allowed, in his charge, to oppose the weight of his opinion against the argument of counsel as to the credibility of the witnesses, but must leave the whole matter to be disposed of by the good sense of the jury, which will generally be found adequate for that purpose. In this case the record discloses that the witnesses referred to in this instruction gave material evidence against the defendant, and the giving of this instruction cannot be overlooked as an immaterial error which could not possibly have affected the verdict of the jury.

There are other assignments of error, but we do not deem it necessary to pass upon them.

We are not authorized to disregard the errors above pointed out, and look into the unobjectionable evidence in the case for the purpose of determining its sufficiency

to justify the verdict.    To weigh the evidence, and determine whether it establishes the guilt or innocence of the defendant, is the exclusive province of a jury, and the defendant is entitled to have this issue submitted to the jury upon legal and competent evidence alone, and upon proper instructions from the court.    We cannot speculate or know what the verdict would have been if the errors referred to in this opinion had not appeared in the case, but are compelled to render judgment upon the questions of law presented by the exceptions of the defendant.

Judgment and order reversed.

GAROUTTE, J., HARRISON, J., and BEATTY, C. J., concurred.

PATERSON, J., concurring. — I think the defendant waived his right to complain of the ruling of the court with respect to the statement made by Moore at the restaurant immediately after the shooting, by withdrawing his objection to the questions asked; but if this were not so, the error was cured by the court in its instruction to the jury, that the defendant was not bound by anything Moore may have said, not in his presence and hearing.

For the reasons stated in paragraph 4 of the opinion, however, and on account of other errors, not noticed in the opinion, I think the defendant was prejudiced by the rulings of the court, and that he is entitled to a new trial. The written statement of Charles F. Smith contained evidence of conversations, other than the conversation inquired into in his examination in chief, — statements which were clearly hearsay.    The testimony of Asche as to what the deceased stated before he met the defendant prior to the homicide may not have had any important bearing on the case in the minds of the jury, but it was, nevertheless, erroneously admitted.    The instruction of the court that "the killing must take place while the

person killed is in the very act of making such unlawful and violent attack, and under such circumstances that the person assailed cannot resort to other legal means to save and protect himself, except retreating or running, which he is not bound to do," omits the element of appearances on which the party assailed is entitled to act, provided for by section 197, subdivision 2, of the Penal Code. (*People* v. *Flanagan*, 60 Cal. 2; 44 Am. Rep. 52.)