[Crim. No. 144. First Appellate District.—January 7, 1909.]

## THE PEOPLE, Respondent, v. JOSEPH SMITH, Appellant.

CRIMINAL LAW—EVIDENCE—PRIOR OFFENSE.—In a criminal case, though ordinarily an independent offense cannot be proved when not connected with the offense charged, yet when another offense is relevant to the issue being tried, or throws light upon the facts of the case in evidence, it is admissible.

ID.—MURDER—PREVIOUS QUARREL WITH EMPLOYEE OF DECEASED—ANIMOSITY ENGENDERED TOWARD DECEASED.—Upon a trial for murder, evidence of a previous quarrel with an employee of the deceased several hours previous to the killing is admissible, when it clearly appears that but for the animosity thereby engendered toward deceased the difficulty between the defendant and the deceased would not have occurred.

ID.—IMPROPER CROSS-EXAMINATION—POSSESSION OF LOADED REVOLVER.
It was prejudicial error upon cross-examination of the defendant
to compel him to state that he hid a loaded revolver on his premises,
beside the pistol and shotgun which had been used by the defend-
ant and identified, and with relation to which loaded revolver he
had not testified in chief, and which was not in evidence; and to
the possession of which the district attorney alluded in argument.

ID.—ATTACK UPON CHARACTER OF DEFENDANT NOT JUSTIFIED.—When
the defendant had offered no evidence as to his character for peace
and quietness, it was error for the court to allow questions for the
prosecution on cross-examination as to whether the defendant was
not a man of violent temper.

ID.—DISSOLUTE AND INTEMPERATE HABITS OF DECEASED—PREJUDICIAL
MATTER.—It was error for the court to allow the prosecution on
cross-examination of the defendant to prove that he was in the
habit of having women in his rooms at all hours of the night drink-
ing liquors, for the purpose of showing that he was an immoral
and dissolute person, and of exciting in the minds of the jury a
prejudice against him for matters in no way connected with the
homicide for which he was being tried.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. William P. Lawlor,
Judge.

The facts are stated in the opinion of the court.

D. J. Murphy, and Theodore J. Roche, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for
Respondent.

HALL, J.—Defendant was charged by information with
the crime of murder for the killing of one Joseph McGowan
on November 26, 1904. Upon his trial he was convicted of
murder in the second degree. In due time he made a motion
for a new trial, which being denied, he was sentenced to im-
prisonment for the term of seventeen years.

This is an appeal from the judgment and the order denying
his motion for a new trial.

It is not contended that the evidence is not sufficient to
support the verdict, but appellant relies for a reversal upon
errors of law committed upon the trial.

The homicide was committed on certain premises designated
as No. 2969 Mission street, in the city and county of San
Francisco, owned by defendant, but theretofore leased by
him to Matthew McGowan, the father of Joseph McGowan.

Though the lease was taken in the name of Matthew Mc-Gowan, it seems to have been taken for the benefit of Joseph McGowan; at least Joseph McGowan took charge of the premises and carried on a business there. The premises consisted of an inclosed yard, used for the storage of brick, sewer-pipe and like material used in the business carried on by deceased. There was a house upon the premises in which defendant resided. One James Beatty, on the date of the homicide and for some time prior thereto, was in the employ of Joseph McGowan, and slept in the house occupied by defendant. The homicide occurred between 9 and 10 o'clock on the morning of November 26, 1904. At about 6 o'clock on the same morning defendant became involved in a quarrel with James Beatty. Joseph McGowan was not present during this quarrel, and did not arrive at the premises until after 9 o'clock A. M. During the quarrel with Beatty defendant ordered him to leave the premises, and snapped a pistol at him. Beatty told defendant that he would telephone for McGowan, to which defendant replied that if McGowan came he would blow his head off. Active hostilities and quarreling between Beatty and defendant finally ceased, and defendant left the premises for a half hour or more and returned with two other persons. McGowan arrived at the premises at about 9 o'clock, but as defendant had locked the gate he could not enter until the gate was unlocked by defendant, which he did after some parleying, whereupon hostilities between McGowan and defendant promptly began. The evidence is conflicting as to who struck the first blow, but evidence was given that defendant upon opening the gate went upon the sidewalk and there attacked McGowan with his fist. Certain it is that they fought with one another, and during the fight defendant was knocked down by McGowan several times, the last time striking his head upon some pieces of marble or stone. McGowan then went into a shed where he attended to some business with Beatty. While McGowan was in the shed defendant went into the house where he resided, and got a shotgun, and instantly killed McGowan as he came out of the shed. McGowan was a young man in his twenties, while defendant was seventy years of age.

The foregoing is but a general outline of the testimony, but is sufficient for our present purpose.

The first point urged by appellant is that the court erred in allowing evidence to be given, over the objection of de-

fendant, of the quarrel between Beatty and defendant, which occurred several hours before the arrival of McGowan upon the premises.

Appellant is quite correct in his statement that the prosecution cannot prove the commission of other offenses by the accused, not connected with the offense charged, for the purpose of raising an inference or increasing the likelihood that he committed the offense charged. Where, however, the offered testimony is relevant to the issue being tried, the mere fact that it shows threats against or quarrels with a person other than the deceased, or the commission of other offenses by the defendant, is no legal objection to its admission. Where the proffered evidence directly throws light upon the facts of the issue being tried, it is admissible although it proves another offense as well. (*People* v. *Suesser*, 142 Cal. 354, [75 Pac. 1093] ; *People* v. *Craig*, 111 Cal. 460, [44 Pac. 186] ; *People* v. *McKay*, 122 Cal. 630, [55 Pac. 594] ; *People* v. *Rogers*, 71 Cal. 565, [12 Pac. 679] ; *People* v. *Miller*, 121 Cal. 343, [53 Pac. 816].) In the case at bar it is impossible to read the testimony concerning this homicide without believing that the difficulty between McGowan would never have occurred had there been no previous quarrel that morning with Beatty. The quarrel and fight with McGowan followed as a consequence of the quarrel with Beatty. Previous to this morning there had been no ill-will between defendant and McGowan. Beatty was the employee of McGowan. Defendant quarreled with Beatty, and ordered him from the premises occupied by McGowan in his business. In this connection Beatty testified: "Mr. Smith ordered me out of the yard; he also asked me about the same time if I had telephoned to McGowan, and I told him I had, and that Mr. McGowan would be out there in a few minutes; and he told me that Mr. McGowan was a God-damned cur and coward, and didn't dast to come out there; and if he did come out there he would blow his head off. After this conversation Mr. McGowan came to the premises." There is evidence that upon Mr. McGowan's arrival defendant at once assaulted him, and the only apparent motive therefor seems to be animosity engendered by the quarrel with Beatty, his employee.

The evidence concerning the quarrel with Beatty was proper as throwing light upon the motives and subsequent acts of defendant in his quarrel and fight with McGowan.

The court, however, erred in some other rulings upon objections to evidence.

The most important and palpable of these concerns the admission of certain testimony forced from the defendant upon cross-examination. The prosecution had proved that defendant had snapped a pistol at Beatty, and had identified and placed the pistol in evidence. It had also been proved that defendant shot McGowan with a shotgun. Up to the time the questions hereinbelow set forth were asked of defendant on his cross-examination the only weapons mentioned in any of the testimony were the shotgun and the pistol drawn on Beatty, which had been identified and put in evidence by the prosecution. Over the objections and exceptions of defendant the district attorney was allowed to ask of defendant the following questions:

"Q. Saying this was the revolver you drew that morning, didn't you have another revolver on those premises? A. I did. I don't know where the revolver is. It was a loaded revolver.

"Q. Wasn't it in that room the morning you drew the revolver on Beatty? A. Yes, it was.

"Q. Wasn't it loaded with cartridges? A. Yes.

"Q. Where did you leave it? A. In a night-dress pocket; I think it was in one of my coat pockets.

"Q. Has not Gallagher informed you that he took that loaded revolver away from those premises? A. He did."

By this action of the court defendant, in violation of his constitutional right, was forced to give evidence against himself.

A defendant who testifies in his own behalf may be properly cross-examined fully about any testimony that he has given upon his direct examination, but not about new matter. (*People* v. *Wong Ah Leong,* 99 Cal. 440, [34 Pac. 105]; *People* v. *O'Brien,* 66 Cal. 602, [6 Pac. 695]; *People* v. *Bishop,* 81 Cal. 116, [22 Pac. 477]; *People* v. *Baird,* 104 Cal. 462, [38 Pac. 310].)

The case of *People* v. *Wong Ah Leong,* 99 Cal. 440, [34 Pac. 105], is particularly in point. There a defendant, who was charged with an assault with a knife, was compelled in cross-examination to testify about a loaded pistol that he had on his person when the assault was committed, although he had not testified about such pistol in his direct examination.

Other witnesses, however, had testified to the fact that he did have such pistol. For this violation of the defendant's constitutional right the judgment of conviction was reversed.

We are unable to distinguish the case at bar from the case above cited. In neither case had the defendant in his direct examination testified about the pistol about which he was compelled to testify in cross-examination. In the case at bar no evidence had been given about such pistol. This loaded pistol was brought into the case only through the questions objected to. The admission of this evidence was clearly erroneous, and the error was emphasized by the district attorney in his argument, when he urged that defendant had an arsenal in his house, mentioning the shotgun and the two pistols, and that he kept the weapons for the purpose of doing murder.

We think the court also erred in overruling objections to the following questions asked of the witness Eells by the prosecution on cross-examination:

"Q. Could you say whether or not he was a man of violent temper?"

"Q. Was he not a man of violent temper?"

The witness had testified to defendant's drinking habits, but had given no evidence that would warrant an attack upon his character such as is involved in the above questions. Defendant had not offered evidence of good character for peace and quietness, and in the absence of such evidence the prosecution may not blacken the character of a defendant by showing that he has a violent temper. (*People* v. *Gordon,* 103 Cal. 573, [37 Pac. 535].) The answers of the witness were such as probably precluded any injury to defendant's cause; nevertheless the questions should not have been allowed, and upon a retrial should be avoided.

The court should also have sustained defendant's objections to certain questions put to the defendant on cross-examination, having for their purpose to prove that he was in the habit of having women in his rooms at all hours of the night drinking liquors. The manifest purpose of these questions was to show that defendant was an immoral and dissolute person, and thus to excite in the minds of the jury a prejudice against him for matters in no way connected with the homicide for which he was being tried. And this is the use the district attorney made of this evidence on this subject in his argument to the jury. He there argued that de-

fendant kept large quantities of whisky and brandy in his room "with which to ply and debauch women who visited him at all hours of the night," and that "he kept a regular harem there."

The objections to the questions touching his drinking with women should have been sustained. (*People* v. *Lee Dick Lung,* 129 Cal. 493, [62 Pac. 71] ; *People* v. *Wallace,* 89 Cal. 161, [26 Pac. 650] ; *People* v. *Webster,* 89 Cal. 573, [26 Pac. 1080].)

It is also claimed that the court erred in refusing certain instructions requested by defendant. We think, however, that the subject matter of the instructions refused were sufficiently covered by instructions given.

For the errors above noted, however, the judgment and order are reversed, and the action remanded for a new trial.

Cooper, P. J., and Kerrigan, J., concurred.