[Crim. No. 346.   Third Appellate District.—November 2, 1916.]

THE PEOPLE, Respondent, v. HENRY J. BLUNKALL et al., Appellants.

CRIMINAL LAW — ACCOMPLICE — CORROBORATIVE EVIDENCE.—The testimony necessary to corroborate that of an accomplice is sufficient if it, of itself, tends to connect the defendant with the commission of the offense, although it is slight, and entitled, when standing by itself, to but little consideration.

ID.—NATURE OF CORROBORATING EVIDENCE.—The corroboration required may be made by circumstantial as well as by direct evidence.

ID.—QUANTUM OF PROOF OF CORROBORATION—INSTRUCTION.—An instruction that corroborating evidence is sufficient if it tends to connect the defendant with the commission of the offense, though of itself, standing alone, "it would be entitled to little weight," correctly states the rule as to the *quantum* of proof essential to the corroboration of an accomplice.

Id.—Credibility of Defendant—Instruction.—An instruction that a defendant in any criminal case is a competent witness in his own behalf, and the fact that he is a defendant is not of itself sufficient to impeach or discredit his testimony, though the jury are entitled to take into consideration his interest in the event of the prosecution in determining his credibility, violates the rule that instructions which purport to state the rules by which the credibility of witnesses or the weight of evidence is to be determined should be made applicable to all the witnesses or all the testimony.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

James T. Matlock, for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendants were jointly charged by information duly filed in the superior court of Tehama County with the crime of grand larceny. The defendants Henry J. Blunkall and Oliver L. Blunkall were convicted of the crime so charged, and prosecute this appeal from the judgment of conviction and the order denying their motion for a new trial.

The defendant Scott, who was not on trial in this case, was made a witness for the people, and as such gave testimony against his codefendants, the Blunkalls, and it is claimed by the latter: 1. That the verdict is not supported by the evidence, because the testimony of Scott was not corroborated as required by section 1111 of the Penal Code; 2. That the court committed prejudicial error in its action in disposing of certain instructions proposed by the respective parties.

The information charges and the evidence shows that the crime of which the defendants were accused and found guilty was committed on or about the twenty-seventh day of August, 1915, and that it consisted of the unlawful and felonious stealing, taking, and driving away of seven head of cattle, which were the property of one H. W. Purcell.

Purcell owned twelve head of cattle and kept them on an inclosed range near a place called Red Bank, about five miles southwest from Red Bluff, Tehama County. The defendant Scott resided at Burbank, and Purcell's home was about three miles from that place. Scott knew the Purcell herd of cattle, they having ranged up and down near where he resided, and knew that Purcell owned said cattle. Late on the afternoon of August 26, 1915, Purcell went to the range and there saw the cattle. On the last day of August, 1915, he again visited the range and thereupon discovered that seven head of his herd were missing. He proceeded to search for the missing cattle and, on the eighth day of September, 1915, after several days of continuous prosecution of the search, found the seven head on a range in the mountains, in what is generally known as Mill Creek canyon, approximately thirty miles from the range from which they were taken. The defendants, the Blunkalls, had ranged their own cattle on the range on which the missing cattle were found.

The cattle taken from Purcell, before they were driven away, bore the earmarks of Purcell, but did not up to that time carry a brand of any character. When found in the mountains it was discovered that the earmarks upon the cattle had been changed, so that they no longer resembled those of Purcell, and that some of the seven head had been branded with a double "B" brand, viz., "BB," while others had been branded with the letter "S."

The defendant Scott testified that he and the defendants Henry and Oliver Blunkall stole and drove the cattle off the Purcell range on the night of August 26, 1915, to the range in Mill Creek canyon. Scott's story as he told it on the witness-stand is, briefly, this: "That, prior to the occasion on which the cattle were taken from the Purcell range, he had talked with Henry and Oliver Blunkall, who are brothers, about "picking up" cattle whenever an opportunity for safely taking them presented itself. Thereafter Scott visited Chico and there met the Blunkalls. He told them that there were grazing near his place several head of unmarked and unbranded cattle. The Blunkalls replied that they would go to the Scott house within a few days and take the cattle referred to by Scott. In pursuance of this understanding, the Blunkalls went to Scott's home on

the twenty-sixth day of August, 1915, arriving there in the early morning, long before daybreak. They drove there in a spring-wagon, taking with them saddles and other equipments for horseback riding. On reaching the Scott place they retired to bed, and remained about the place during most of the twenty-sixth day of August. Scott and Oliver Blunkall went out over the range during that day to inspect the cattle and the situation generally. They found that there were only two head of unmarked cattle on the range. Scott expressed the fear that if they took the marked cattle they would readily be detected, but Oliver Blunkall said that they might as well take the marked cattle; that he could so change the marks they then bore that they could not be identified, so far as the marks were concerned. At a late hour of the night of the twenty-sixth day of August, the three defendants, each riding a horse, went to the range, and drove therefrom eight head of cattle, one of the eight being the property of another party. On their way to the Mill Creek canyon with the eight head, they took a calf from a neighboring ranch which belonged to one Barney Bauder. Thus they drove to the mountains nine head of cattle. Scott said that the agreement between the Blunkalls and himself was that the stock should be equally divided, each to take three head; that when they arrived at the canyon the Blunkalls changed the marks on all the marked cattle and branded them. The six which were taken by the Blunkalls as their share were branded with the Blunkall brand, viz., "BB." Scott's three were branded with his brand, viz., the letter "S."

The wife and daughter of Scott testified that the Blunkall brothers were at the Scott house on the twenty-sixth day of August, arriving there in a spring-wagon early in the morning and immediately retiring to bed; that they brought with them their saddles, and remained about the house most of the time during that day. Both testified that they heard Scott and the Blunkalls "planning" the taking of the cattle pasturing "out on the plains." Mrs. Scott said she heard the three defendants say that they intended "to take those cattle on the plains" to Mill Creek canyon. Both mother and daughter testified that a Mrs. Baldwin and a Mr. Eckert, who resided in the neighborhood of the Scotts, visited the house of the latter on August 26th, in the daytime, and

that the Blunkalls attempted to avoid being seen by them. The daughter said that Henry Blunkall, upon observing Eckert coming to the Scott home, went into the house, whereupon Mrs. Scott asked him, "What is the matter?" to which Henry replied that he did not desire to be seen by anyone, "especially Mr. Eckert, as he would know he was up there doing something, and he did not want him to see him when he was out doing that kind of business." The young woman also testified that a social dance in the district schoolhouse was scheduled for the evening of the 26th of August, and that Oliver Blunkall asked her about the dance and whether she thought there would be a large attendance thereat, and that she replied, expressing the opinion that the affair would be largely attended. "He then said he guessed they wouldn't interfere with the business of taking the cattle." Both the mother and daughter testified that the three defendants left the Scott place on horseback late on the night of the twenty-sixth day of August, and that Scott did not return to his home after that night until the following Sunday, which was the twenty-ninth day of August.

Both Mrs. Scott and her daughter detailed other circumstances connected with the presence of the Blunkalls at the Scott home, which tended to show that those defendants had gone there for the purpose of carrying out the scheme of the three men to take the cattle of Purcell or "the cattle pasturing on the plains"; but we have already presented in substance enough of the testimony of those witnesses to demonstrate that the testimony of Scott was fully corroborated. Indeed, we make bold to say that if there was no other testimony in the case tending to connect the Blunkalls and Scott with the commission of the crime charged but the testimony of Mrs. Scott and that of her daughter, as it is briefly stated above, a reviewing court would go beyond its legitimate function in setting aside a verdict predicated thereon.

Section 1111 of the Penal Code provides, in part: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

If there be some independent evidence fairly tending to connect the defendant with the commission of the crime, then the testimony of the accomplice is corroborated within the intent of the above section. (*People* v. *Garnett,* 29 Cal. 622; *People* v. *Clough,* 73 Cal. 348, [15 Pac. 5]; *People* v. *Miller,* 65 Iowa, 60, [21 N. W. 181]; *People* v. *Mayhew,* 150 N. Y. 346, [44 N. E. 971].)

In *People* v. *McLean,* 84 Cal. 480, 482, [24 Pac. 32], it is said: ''The corroborating evidence is sufficient if it, of itself, tends to connect the defendant with the commission of the offense, although it is slight, and entitled, when standing by itself, to but little consideration. (See *People* v. *Melvane,* 39 Cal. 616.)''

It is true, as is contended, that the ''corroborating testimony'' in this case consists of circumstantial evidence, but the corroboration required by the section named may properly be made by circumstantial as well as by direct evidence. The circumstances detailed by the corroborating witnesses here are of the most incriminatory character, and, as above stated, sufficient of themselves to fasten guilt upon the accused. They therefore went beyond the requirement of the rule relative to the corroboration of the testimony of an accomplice.

The appellants complain of the following instruction, and declare that it involves an erroneous statement of the rule: ''While corroborating evidence must create more than a mere suspicion, it is not required that it be of itself sufficient to convict, nor need it extend to every fact and detail covered by the statements of the accomplice. It is sufficient if, standing alone, it tends to connect the defendants with the crime. It is sufficient if it tends to connect the defendants with the commission of the offense, though of itself, standing alone, it would be entitled to but little weight.''

The objection to said instruction may best be stated in counsel's own language as follows: ''The words 'it would be entitled to but little weight' is an erroneous instruction. The court should have given the jury the positive instruction that such testimony is not sufficient upon which to convict.'' We confess that we are not entirely clear regarding the precise point which counsel thus attempts to urge as the ground of his objection to the instruction. If he means to contend that the court should have stated it as a general

proposition to the jury that evidence offered for the purpose of corroborating the testimony of an accomplice can never be sufficient to justify a conviction, the obvious reply is that there is no legal ground or reason upon which such a proposition may be supported. That evidence corroborative of the testimony of an accomplice might be.sufficient to justify a conviction, there can be no possible doubt, and no better illustration of this proposition can be found than in the present case. The instruction clearly and correctly states the rule as to the *quantum* of proof essential to the corroboration of an accomplice,. and plainly told the jury, in effect, that, while corroborative evidence need not, and might not, when taken alone, be sufficient to warrant the conviction of a person charged with crime, it would meet the test as corroborative proof if it merely tended to connect the defendant with the commission of the offense. This involved an accurate statement of the rule as the legislature has written it.

The court refused to adopt and read to the jury a number of instructions proposed by the defendants, and it is insisted that in its action in so doing it erred to the serious detriment of the defendants' rights at the trial. One or two only of the assignments under this head merit special attention.

The following is one of the refused instructions preferred by the accused: ''The jury are instructed that a defendant in any criminal case is a competent witness on his own behalf, and the fact that he is a defendant is not of itself sufficient to impeach or discredit his testimony, though the jury are entitled to take into consideration his interest in the event of the prosecution in determining his credibility.'' The instruction was wholly inapplicable to the case, inasmuch as neither of the defendants on trial was called to testify. Moreover, the instruction, if pertinent, would be subject to the objection that it singles out the testimony of a particular witness, and instructions which purport to state the tests or rules by which the credibility of witnesses or the weight of evidence is to be determined should be made ap-
·plicable, not to a single witness or his testimony only, but to all the witnesses or all the testimony.

The defendants requested an instruction declaring that the witness W. A. Scott, one of the defendants, was an accomplice, and the court denied the request. We perceive in the

court's refusal to so instruct the jury no prejudicial error. It is true that it was established beyond controversy that Scott was an accomplice, if the crime charged was committed as he declared it to have been; still, the court clearly explained to the jury who an accomplice in crime is under our law, and with equal clearness stated that the Blunkalls could not legally be convicted upon the uncorroborated testimony of an accomplice.

We have now considered all the objections to the action of the trial court in disallowing instructions proposed by the accused which we think deserve special notice. It is sufficient to say of the other instructions so proposed and rejected which were pertinent to the issues of the case that they involved the statement of principles which the court, in clear language, announced to the jury in its charge. And, in this connection, it is to be said that the charge of the court contained a full and correct statement of every rule or principle of law applicable to the issues or vital facts developed by the proofs.

The appellants appear to have been accorded a fair and impartial trial, the verdict seems to be supported by ample evidence, and the record is free from prejudicial error.

The judgment and the order are therefore affirmed.

Chipman, P. J., and Burnett, J., concurred.