[Crim. No. 758. Second Appellate District, Division One.—May 4, 1921.]

## THE PEOPLE, Respondent, v. FLORENCE M. LONG-LAND, Appellant.

[1] CRIMINAL LAW—ARSON—EVIDENCE—ILLICIT INTERCOURSE BETWEEN DEFENDANT AND CONFESSED ACCOMPLICE—REVERSIBLE ERROR.—In a prosecution for the crime of arson, it was reversible error to admit evidence of acts of illicit intercourse between the defendant and a confessed accomplice, in the absence of a showing of a causal connection between such acts and the commission of the crime, since its sole and only effect was to degrade the defendant before the jury.

[2] ID.—TESTIMONY OF HIRED DETECTIVES—CONSIDERATION BY JURY—INSTRUCTION.—An instruction in a prosecution in which there is the testimony of only one detective that the testimony of hired detectives should not be disregarded solely for the reason that they have been thus employed but that their testimony should be given the same consideration as other testimony is objectionable as directing the attention of the jury to a particular witness.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Reversed.

The facts are stated in the opinion of the court.

Power & McFadzean and Bradley & Bradley for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman, Deputy Attorney-General, for Respondent.

SHAW, J.—Defendant appeals from the judgment pronounced following her conviction of the crime of arson.

The subject of the arson was a dwelling-house situated upon a ranch located in Tulare County, owned by defendant, and which was destroyed by fire on February 26, 1919, while defendant was absent therefrom and in the state of Nevada.

---

1. Other offenses as provable in arson, note, **Ann. Cas.** 1915D, 174.

The evidence upon which she was convicted is that of a confessed accomplice, Henry Ingram, and James Duffy, a detective, whose corroborative testimony, notwithstanding its questionable character, the jury within its province accepted as true.

According to Ingram's testimony, his acquaintance with defendant began in 1908. Later, in 1918, a relation of intimate friendship ripened into an engagement of marriage, which existed at the time when he says that, acting at defendant's request and pursuant to an agreement made with her so to do, he, while she was in Nevada, set the fire whereby the dwelling-house was destroyed; that her purpose, as repeatedly stated to him, in wishing the house burned, was to render it impossible for Mr. Willard, with whom she was involved in litigation as to the right to possession of the property, and who, with his mother, resided upon the premises against defendant's will, to continue his occupation of the same. The testimony of Duffy is that, pursuant to his employment as an investigator, he had a conversation with defendant, who, prior to such time, was an entire stranger to him, wherein she of her own accord stated that Ingram in committing the arson had acted at her request and under her direction, all of which evidence tending to implicate defendant in the commission of the crime she strenuously denied.

[1] While no attack is made upon the sufficiency of the evidence to warrant the verdict, counsel for appellant directs attention to facts showing its inherent weakness, the purpose thereof being to illustrate the prejudicial effect of the ruling of the court in erroneously admitting a line of testimony given by Ingram to the effect that, commencing at a time long prior to the commission of the crime, and on a great number of occasions, he and defendant had indulged in acts of illicit intercourse. No purpose could be served by quoting the testimony touching these acts. Suffice it to say that, over defendant's objection, Ingram was not only permitted to relate the minute and disgusting details of such acts, but also to repeat the shockingly vile and offensive language the use of which he attributed to defendant on some of such occasions. If true, the nature of his testimony was such as to establish the fact that defendant had reached a point in moral degradation comparable only

with those of the most abandoned of her sex. While the attorney-general concedes that perhaps the indecent and disgusting character of the testimony adduced from the witness touching the acts and .conduct of defendant was such as to unnecessarily accentuate them, nevertheless he insists the evidence was admissible for the purpose of proving the motive and intent of defendant, which acts, it is claimed, "furnish a clear and understandable motive for the commission of the crime." Counsel, however, fails to direct our attention to any evidence which tends in the slightest degree to support his assertion, or show any causal connection between defendant's immoral acts and the commission of the crime with which she was charged. In the absence of such showing, we are unable to perceive how or why the commission of such acts of illicit intercourse should have prompted defendant to commit the criminal offense with which she was charged, the motive for which act, according to the testimony of both Ingram and Duffy, was the fact that she desired to have Willard and his mother, who occupied the house, leave the ranch, and as a means of compelling them to do so she induced Ingram to destroy the house, thus rendering the premises uninhabitable; a further motive for which might be the fact, which is made to appear, that she held a policy of insurance upon the house. Since the testimony as to defendant's immoral conduct did not tend to establish a motive for committing the crime, its sole and only effect was to show that she was a most dissolute and degraded character, and thus excite in the minds of the jurors a prejudice against her on account of matters which, if true, were in nowise connected with the crime for which she was being tried, and cause them to give less weight to her testimony than they otherwise would have done. "The general rule is that the prosecution is not only forbidden to prove any other crime, but may not introduce evidence designed merely to degrade and prejudice the defendant before the jury." (*People* v. *Glass*, 158 Cal. 655, [112 Pac. 281]; *People* v. *Smith*, 9 Cal. App. 644, [99 Pac. 1111]; *People* v. *Wallace*, 89 Cal. 158, [26 Pac. 650].)

[2] While the judgment must be reversed on account of the admission of the testimony referred to, we deem it

worth while to consider appellant's attack upon the ruling of the court in instructing the jury, at the request of the prosecution, as follows: "You are further instructed that you should not as jurors disregard the testimony of hired detectives solely and only for the reason that they have been thus employed. You should give to their testimony the same consideration as to any other testimony in the case, giving it such weight as, considering the nature of the same, the opportunities for knowing the facts to which they testified, and their appearance and demeanor upon the witness-stand, and all the other elements which go to their credibility, including their interest and bias, and to give their testimony such weight as, under all the circumstances, the same is in your judgment entitled to receive." As an abstract proposition of law, the instruction may not be erroneous. Nevertheless, it is subject to the objection that inasmuch as Duffy was the only detective who had testified, the effect thereof, was to single him out for special attention. That the jury so understood it, is apparent from the fact that after spending several hours in deliberating upon their verdict they returned into court, when one of their number said: "Your Honor, we would like to hear your instructions . . . in regard to Mr. Duffy. I believe you had some instruction in regard to his testimony"; to which the court replied: "I had no instruction in regard to Mr. Duffy, but as to the detective." Juror: "Well, as to the detective." Whereupon the jurors returned to their deliberations and shortly brought in the verdict. "It is error for the judge in his instruction to the jury, to single out a particular witness and to direct such cautionary instructions against his testimony, as such a course would tend to convey to the jury the impression that that particular witness is disbelieved by the judge." (Jones on Evidence, sec. 905; *People* v. *Lonnen,* 139 Cal. 634, [73 Pac. 586]; *People* v. *Blunkall,* 31 Cal. App. 778, [161 Pac. 997]; *People* v. *Kilfoil,* 27 Cal. App. 36, [148 Pac. 812].) While the instructions considered in the cases cited were cautionary in character, what is said is likewise applicable to laudatory instructions. In the one case the instruction is objectionable because it might indicate that the particular witness is disbelieved by the judge; in the other it is objectionable because of the added weight

which the jury might attach to the testimony on account of what is said by the court. No occasion existed for so instructing the jury. The giving of it was error for the reason that it directed the jury's special attention to the testimony of one particular witness, by reason of which fact it might have attached greater weight to Duffy's testimony than it would have done under the general instructions given as applicable to the credibility of all the witnesses testifying in the case.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.