[Crim. No. 1059. Third Appellate District.—November 19, 1928.]

THE PEOPLE, Respondent, v. LEO ALLEN et al.,
Appellants.

H. W. Coale and Berry & Watson for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The appellant and one Leonard Moore were indicted for the crime of robbery alleged to have been

committed in the city of Stockton on or about the twenty-sixth day of July, 1928. Leonard Moore pleaded guilty and appeared as a witness against the appellant. The appellant's motion for a new trial being denied, an appeal therefrom and from the judgment of conviction was taken to this court.

Three reasons are assigned as causes for reversal. First: That the court erred in admitting testimony as to other offenses. Second: That the appellant was convicted on the uncorroborated testimony of an accomplice. Third: That the court erred in refusing to give certain instructions requested by the defendant, and in giving other instructions alleged to be prejudicial to the rights of the defendant.

The record shows that prior to the year 1928, the appellant and Leonard Moore had been acquainted with each other for a period of between four and five years; that for some period of time they had been together at intervals in the town of Truckee, where Leonard Moore was employed; that some time early in the year 1928 the appellant left Truckee for the city of Fresno, and after remaining there a short period of time, came to Stockton, where he had resided for about two months preceding the date of the alleged robbery. At the city of Stockton the appellant resided with Alec T. Darak, an Armenian who was engaged in the business of making, repairing, and renovating rugs; that while the appellant was residing with said Darak, a woman by the name of Mrs. Bertie Devereaux also resided at the same place. It further appears from the record that the appellant and Mrs. Devereaux were on very friendly terms for at least a few weeks preceding the twenty-sixth day of July, 1928; that during this friendly association some conversation was had relative to purchasing a roadhouse somewhere outside the limits of the city of Stockton; that Mrs. Devereaux stated that she had diamonds upon which she could raise approximately fifteen hundred dollars; that appellant stated that he had no money but had a friend living in Truckee who possibly had some; accordingly, the appellant wrote a letter to Leonard Moore in the Armenian language which was translated into English by Mr. Darak; in this letter the appellant stated that he had a business proposition or a proposition in which money could be made, and asked

Leonard Moore to come to Stockton; this letter was written on or about the twentieth day of July, 1928; at about this time it appears that while at the residence of Mr. Darak, the appellant and Mr. Darak were having some conversation about guns, jewelry, etc.; that Darak stated to the appellant that he had a gun; this gun was kept in a wooden box under a bed occupied by Darak; Darak got this wooden box from under the bed, unlocked it and exhibited the gun to the appellant, also the watch and some articles of old jewelry; whether these articles of jewelry were of any value or not does not appear in the record. Following this incident the record shows that thereafter, and on or about the twenty-third day of July, 1928, Darak missed the revolver referred to; also, the old jewelry and the watch. There is some testimony in the record that the watch was missed at an earlier period, but this is doubtless an error in memory, which is shown by the fact that the witness Darak testified that the box containing the articles in question was taken some time previous to the 23d of July and missed by him on that date.

Responding to the letter written by the appellant, the defendant Leonard Moore arrived in Stockton on the afternoon of the 24th of July, and went to a rooming-house recommended by the appellant, and there registered under an assumed name, and was assigned to room number 11. The testimony of the rooming-house keeper shows that the appellant knew of the registration of Leonard Moore under an assumed name, and also the room to which he was assigned. It further appears from the record that Mr. Darak and Mrs. Devereaux left Stockton and went to Sacramento on the afternoon of July 24th to deliver rugs, and did not return to Stockton until shortly before midnight of July 25th. The testimony of the accomplice Moore is to the effect that the appellant arranged the details of the robbery as follows: That he would advise Moore of the return of Mrs. Devereaux and Mr. Darak; that he would get them both intoxicated, and then Moore could come to the Darak residence, which was known as 420 Channel Street in the city of Stockton, and rob Mrs. Devereaux of the diamonds possessed by her. The testimony of Moore is to the effect that appellant gave him the gun and watch, also

the jewelry heretofore referred to; that these articles were given to him on the afternoon of the 24th of July, during the absence of Darak and Mrs. Devereaux. The record further shows that Darak and Mrs. Devereaux returned to Stockton at about 11 P. M. on July 25th; that after the return of said parties from Sacramento they proceeded to prepare a dinner, which was eaten, and then some liquor was drunk by said parties from a flask furnished by the appellant. Just when and where this flask of intoxicating liquor was obtained by the appellant does not appear. It further appears that at some time after 11 o'clock on the night of July 25th, and after Mr. Darak and Mrs. Devereaux had been supplied with liquor by the appellant, the appellant went to the rooming-house occupied by Mr. Moore and knocked at room number 11. At just what hour this incident occurred can only be inferred from the chain of circumstances shown in the record. The keeper of the rooming-house testified that he went to bed at 11 o'clock; that- he had fallen asleep; just how long he slept he did not know, but that he was awakened by someone coming and knocking at room number 11; that he arose, looked to see who it was and recognized the appellant; that shortly after the appellant had knocked at the door of room number 11, and receiving no response, the defendant Moore came to the room, got his belongings, including a suitcase, left the rooming-house, went down and got into an automobile. The defendant Moore testified that the appellant met him outside of the rooming-house; notified him in substance that conditions were as planned; that he got his belongings, including his suitcase, got into an automobile and drove to a point on Channel Street opposite the Darak residence; that shortly after he arrived there the appellant came out and told Moore to come in and make the holdup. Following this the defendant Moore entered the room, where the appellant, Darak and Mrs. Devereaux were, with a drawn revolver, and ordered all persons to throw up their hands, at which juncture the defendant Moore proceeded to take the diamond rings from the fingers of Mrs. Devereaux, using considerable force in so doing; that during the course of the robbery the defendant Moore put the gun referred to in his pocket, and at that time the appellant and Darak lowered

their hands, Darak remarking to the defendant, in Armenian, that they might help Mrs. Devereaux, to which the appellant replied, in Armenian, that there was a man with a gun in the room that had been occupied by the appellant and that if they made a move, they would be dead men, or words to that effect. After the robbery the defendant Moore went out of the side door of the Darak residence and started toward the waiting automobile, when he was intercepted by a watchman and arrested. The diamonds, watch, jewelry, and gun being found in the possession of the defendant Moore, the defendant Moore told the whole story and pleaded guilty. There were other minor details bearing slightly upon the occurrences related, such as the appellant leaving the Darak residence on the night of the 26th of July and going out to make some small purchases, and also as to the various times the appellant and Moore were together while awaiting the return of Darak and Mrs. Devereaux from Sacramento.

The appellant urges that the admission of the testimony in relation to the gun, jewelry, and the watch constituted reversible error; that such testimony related to and showed a separate and distinct offense and, therefore, under several authorities cited by appellant, was inadmissible. The authorities collected and cited by this court in the case of *People* v. *Avila*, 78 Cal. App. 415 [248 Pac. 693], show as there said, "The universally recognized rule is that a defendant in a criminal cause can be tried for no other offense than that charged in the indictment or information. It is not competent for the prosecution to prove the commission of independent crimes by the defendant, the evidence of which has no tendency to prove some material fact in connection with the particular crime charged." Again, in the case of *People* v. *Coan*, 85 Cal. App. 580 [259 Pac. 998], this court had occasion to examine the authorities having to do with the admission of evidence relating to other offenses than the one charged in the indictment or information. An examination of those cases will show that this court stressed the point that such testimony is inadmissible when it relates solely to independent and unrelated offenses, and that the rule does not exclude testimony relative to offenses connected with the main charge upon which

a defendant is being tried. Thus, if the prior or other offense to which the testimony relates shows that it is connected with the offense set forth in the main charge, such as being preparatory to the commission of the major offense or a motive for its commission, or, to use the language most commonly employed, connected with the offense upon which the defendant is being tried, then and in that case such testimony is admissible. There is no question in our minds that depriving Darak of the means of defense, such as taking away his gun, was a step preparatory to the commission of the offense for which the defendant was placed on trial. It is true that the theft of the gun, in point of time, was prior to the actual holdup, but it was likewise subsequent in time to the letter written to Moore to come to Stockton and engage in the business enterprise or "money making proposition," and is just one of the steps leading up to the robbery, as testified to by the accomplice. The accomplice testified that the appellant gave him the watch, the jewelry, and the gun. The testimony of Darak shows that the box in which the gun, the watch, and the jewelry were kept was shown by him to the appellant several days preceding the robbery, and that the box and its contents had been taken prior to the arrival of the accomplice from Truckee. While the testimony as to the watch and the jewelry, if not accompanied by testimony as to the taking of the gun, could not be considered as testimony showing preparation, but in view of the fact that the watch, the jewelry and the gun were kept, as testified to by Darak, all in one locked box, and in taking the box, the taker necessarily took all its contents, we do not very well perceive how any testimony as to the watch or the jewelry could be considered as grounds for reversal, when the taker of the box, in order to take the gun, had either to break open the box, or take the box with all of its contents. The taking of the box in order to get the gun and deprive Darak of its use, and making sure that there would be no dangerous opposition to the robbery, can only be considered under the circumstances as a preparatory step, and clearly admissible.

▮ Does the testimony in this case, as heretofore recited, sufficiently fill the requirements of section 1111 of the Penal Code, which specifies that a conviction cannot be had on

the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense? The authorities are so numerous upon this question, and the rule so plain, that we do not need citation of many cases. One only will suffice. In *People* v. *Flood*, 41 Cal. App. 373 [182 Pac. 766], it is said that such testimony is sufficient if it tends to connect the defendant with the commission of the offense, and that such testimony, standing alone, might be considered weak and wholly insufficient to justify conviction. Thus, it is not a question whether the corroborating testimony establishes the appellant's guilt in this case, or whether, if it stood alone, a judgment of conviction might be supported, but simply whether the corroborating testimony tends to connect the appellant with the commission of the crime charged. Does the corroborating testimony so tend? ■ In the first place, the appellant and the accomplice had been acquainted for a number of years. There is no testimony showing that either one of them was possessed of sufficient funds to embark in any business enterprise. Both of them were working around restaurants and ranches as employees. The appellant, knowing of the possession of diamonds by Mrs. Devereaux, upon which he thought approximately fifteen hundred dollars might be raised, wrote to his acquaintance (not to say friend) in Truckee, stating that he had a money-making proposition, and asking his acquaintance Moore to come to Stockton. In answer to this letter Moore journeyed to Stockton, registering at a rooming-house recommended by the appellant under the assumed name of "Hill." The appellant was aware of this registration. The testimony showed that he examined the register of the rooming-house; that he visited Moore at room number 11, to which Moore had been assigned; that on the night of the robbery, a few minutes before its occurrence, the appellant was seen knocking at the door of room number 11; that he did not find the defendant Moore in his room; that a few moments after the appellant left the rooming-house, Moore came to room number 11, got his belongings and departed; that both Darak and Mrs. Devereaux had been given intoxicating liquor from a flask obtained by the appellant; that at the time of the robbery the appellant,

when spoken to in the Armenian language by Darak, to the effect that an opportune moment had arrived when help might be given Mrs. Devereaux, remarked that there was a man in the room formerly occupied by the appellant, armed with a gun, and that if they made a move they would be dead men. There is some testimony that another person was outside the house, but there is absolutely no testimony that there was any such man in the room occupied by the appellant at a former period. Upon being arrested the testimony further shows that the appellant denied his acquaintance with the defendant Moore. Subsequently he admitted the former acquaintance. All this followed what we have said about the occurrence of the disappearance of the gun belonging to Darak. When taken to jail after his arrest, as heretofore stated, the gun belonging to Darak, the jewelry and the watch were found in the possession of the defendant Moore. All of these incidents, the taking of the gun, the plying of Darak and Mrs. Devereaux with intoxicating liquor, the going to the rooming-house occupied by Moore a short time before the robbery, tally exactly with the plan of the robbery as disclosed by the testimony of the accomplice Moore, and we think, beyond controversy, tends to connect the appellant with the commission of the crime charged in the indictment, and furnishes ample justification for the jury accepting the testimony of the accomplice as to the robbery as being true and correct, and of the appellant's planning the same and participating therein.

We find no error of the court in refusing requested instructions, and will confine our further discussion to the alleged error of the court in giving the following instruction: "The defendant has offered himself as a witness on his own behalf on this trial, and, considering the weight and effect to be given his evidence, in addition to noticing his manner and the probability of his statements taken in connection with the evidence in this cause, you should consider his relation and situation under which he gives his testimony, the consequences to him relating from the result of this trial, and all the inducements and temptations which would ordinarily influence a person in his situation. You should carefully determine the amount of credibility to which his evidence is entitled; if convincing and carrying

with it a belief in its truth, act upon it; if not, you have a right to reject it." Under the authorities cited in the case of *People* v. *Longland*, 52 Cal. App. 499 [199 Pac. 546], this instruction should not have been given, and it is error for the court to single out and direct the jury's special attention to the testimony of any particular witness. This, however, does not, in view of section 4½ of article VI of the state constitution, necessitate a reversal of the judgment. While the court should not, by any language in its instructions, tend to either disparage or strengthen the testimony of any witness, yet if the language used by the court is only the statement of a commonplace fact, or the recital of what is, we may say, universally known by all persons competent to act as jurors, we cannot, for such error on the part of the trial court, conclude that there has been a miscarriage of justice. It is surely commonplace to say that anyone who would plan or participate in a crime such as that with which the appellant stands charged, would not hesitate to testify at least strongly in his own behalf. The jury, if possessing common intelligence, is aware of the predicament in which a defendant stands when charged with a robbery committed by force of arms. The jury is aware that a defendant under such circumstances is facing a possible long period of incarceration. The jury will necessarily notice the manner in which the defendant testifies; they will consider the probability of his statement; they will also fully weigh the situation under which he gives his testimony, and, likewise, the consequences resulting to the defendant from a verdict of guilty. While the court should not have given the instruction set forth herein, we cannot say that because the court told the jury what all jurors competent to act as such must necessarily know, constitutes grounds of reversal.

The order and judgment appealed from are affirmed.

Hart, J., and Finch, P. J., concurred.