[In Bank. — March 28, 1883.]

THE PEOPLE, RESPONDENT, *v.* JOSEPH HURTADO, APPELLANT.

HOMICIDE — EVIDENCE — CONFESSION BY WIFE OF ADULTERY — INSANITY. — Defendant was found guilty of murder in the first degree. The wife of defendant testified, on his behalf, that she confessed to him, prior to the killing, she had

been guilty of adultery with the deceased, and that the confession was followed by great anger, weeping, and mental depression on the part of defendant. Defendant, having introduced evidence that a certain house in Sacramento was a house of ill-fame, offered to prove by a witness the independent fact that deceased had been seen entering the house in company with the defendant's wife. The wife's testimony had not been impeached. *Held*, that the court rightly excluded the testimony. It was her statement which could be claimed to be the cause, or one of the causes, which deprived him of his reason, not the truth of her statement, with respect to which he had no personal knowledge.

ID. — MANSLAUGHTER — PASSION — PROVOCATION. — If a defendant charged with murder is so far in possession of his mental faculties as to be capable of knowing that the act of killing was wrong, any partial defect of understanding which might cause him more readily to give way to passion than a man ordinarily reasonable, cannot be considered for any purpose. To reduce the offense to manslaughter, the provocation must at least be such as would stir the resentment of a reasonable man.

ID. — CHARGE. — The charge of the trial court must be taken together, and if, without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issues tried, the appellate court will not disturb the judgment because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text.

ID. — THREATS. — The defendant asked the court to charge, "If the defendant had been told of threats made by deceased against him, . . . . then defendant *had a right* to arm himself," etc. The court refused to so instruct. *Held*, not error; it was for the jury to determine from the evidence whether the defendant was justified in arming himself and in using arms.

ID. — DEPOSITION — CONSTITUTION. — Section 13, article 1, of the present Constitution is no prohibition upon the power of the legislature to authorize the taking of depositions by the *defendant* in every class of criminal cases.

ID. — EVIDENCE — STATEMENTS. — A witness, Morrison, testified that he told defendant of a conversation he had with his (defendant's) wife, *in which she promised she would be good and do what was right*. Defendant then asked the witness to state any conversation he had with her in which she made any admission of her adultery with Estuardo, the deceased. The court sustained an objection by the prosecution. *Held*, not error; it is manifest that any statement the wife may have made to the witness Morrison not made known to the defendant could not have had any tendency to overthrow his reason.

ID. — INSTRUCTION — ASSUMING FACTS NOT PROVED — SEDUCTION. — The court refused the following instruction: "It is proper for the jury to take into consideration the statements made to him of the seduction of his wife by deceased, as proper for you to consider in arriving at a conclusion as to whether he understood and was legally responsible for the killing; also, to aid you in arriving at the conclusion as to whether the act was premeditated or done with malice." *Held*, not error; the instruction assumes that statements were made to defendant " of the seduction of his wife by deceased." Seduction implies more than illicit intercourse.

ID. — DEGREES OF MURDER — PUNISHMENT. — The court refused the following instruction: "If you believe the defendant, in truth and in fact, when he killed deceased believed deceased had seduced his wife, while it is in itself no excuse or sufficient provocation to excuse murder if you believe he wholly understood and could control his act at the time of the homicide, yet it is proper for you to take into consideration in arriving at the degree of murder, if any, of which he may be guilty; also it is proper for you to take such testimony into consideration in fixing the punishment if you should find him guilty of murder in the

LXIII. CAL. — 19

first degree." *Held,* not error ; the belief by defendant that deceased had seduced his wife could not of itself tend to reduce the crime to murder of the second degree

APPEAL from a judgment of the Superior Court of Sacramento County.

The facts are stated in the opinion of the court.

*C. I. Jones, A. L. Hart,* and *T. B. McFarland,* for Appellant.

*Attorney-General,* and *Johnson,* for Respondent.

McKINSTRY, J.—Defendant was found guilty of murder in the first degree.

Two defenses were relied on at the trial. First, that defendant was laboring under insanity when the fatal shot was fired; second, that the killing was manslaughter only.

The wife of defendant testified, on his behalf, that she confessed to him prior to the killing, she had been guilty of adultery with deceased, and that the confession was followed by great anger, weeping, and mental depression on the part of defendant. Defendant, having introduced evidence that a certain house in Sacramento was a house of ill-fame, offered to prove by a witness, one Clenfuegas, the independent fact that deceased had been seen entering the house in company with defendant's wife. The testimony would have tended to prove the adultery. The court below sustained the prosecution's objection to the testimony.

It is urged by appellant—the defendant—the evidence was admissible as corroborating the testimony of defendant's wife that she had confessed to her husband. No direct evidence was introduced by the people to contradict her statement that she had made the confession to her husband. We know of no principle which would permit defendant to strengthen or bolster up the statement of the witness that she had declared to defendant she had committed adultery, by proving that, in fact, she had committed adultery. Evidence that she had committed adultery would not tend to prove that she confessed to her husband she had committed adultery. It was her statement which could be claimed to be the cause, or one of the causes, which deprived defendant of his reason—not the truth of her state-

ment, with respect to which he had no personal knowledge. It may be the presumption, to which she, in common with all other witnesses was entitled, that she was telling the truth, and the further presumption that she would not swear falsely she had been guilty of adultery unless she was in fact guilty, were balanced or overcome in the minds of the jurymen by the probability she would swear falsely to save her husband from conviction. But we cannot assume that the jury arbitrarily, because she was the wife of defendant, rejected her testimony, or that they rejected it at all, since, if they accepted her statement as absolutely true, the verdict may be just. The credibility of each witness — not directly impeached — must be determined by the jury, and we must presume was in this case determined by the jury, upon consideration of the manner of the witness, the inherent probability of the testimony, and the other evidence in the cause, admitted because of its relevancy to the issues tried. To admit evidence in itself totally irrelevant, because it might in some degree render more probable testimony which is relevant, would be to open up the way to the trial of side issues not made by the pleadings. If it were competent for the defense to give evidence tending to prove that defendant's wife had committed adultery, it would be competent for the prosecution, in rebuttal, to prove that she had not committed adultery; in the case before us, to introduce witnesses who should swear that the house referred to was a house of good repute, or that defendant's wife never entered it. Moreover, it would have been competent for the prosecution, in the absence of evidence on the part of defendant tending to prove her adultery, to cast discredit upon her testimony that she had confessed her guilt to her husband, by proving that she was entirely innocent. We are convinced the objection was properly sustained.

The court below refused the request of defendant to give the instruction following:—

"If the jury believe from the evidence that the defendant was not so insane, at the time of the homicide, as to be irresponsible for his acts, but at the time he was laboring under such a mental unsoundness as to cause him to be easily aroused to a sudden heat of passion, and that he committed the homicide without malice aforethought, but on a sudden heat of passion, aroused

and caused by an act of injustice towards him, committed by the deceased, it will be their duty to find him guilty of manslaughter only."

The instruction was properly refused. If defendant was so far in possession of his mental faculties as to be capable of knowing that the act of killing was wrong, any partial defect of understanding which might cause him more readily to give way to passion than a man ordinarily reasonable, cannot be considered for any purpose. To reduce the offense to manslaughter the provocation must at least be such as would stir the resentment of a reasonable man.

It cannot be urged that the homicide is manslaughter because it was committed in an unreasonable fit of passion. In an abstract sense anger is never reasonable, but the law, in consideration of human weakness, makes the offense manslaughter when it is committed under the influence of passion caused by an insult or provocation sufficient to excite an irresistible passion in a reasonable person; one of ordinary self-control.

There was some evidence that defendant "lay in wait" for deceased. We cannot say, therefore, that the instruction in that regard was totally inapplicable and misleading.

Defendant excepts to the portion of the charge to the jury which reads: "If the defendant voluntarily killed the deceased, and you are satisfied from the evidence, beyond all reasonable doubt, of such voluntary killing, then it is your duty to convict him unless you find from the evidence that the case comes within some one of the specifications of excusable or justifiable homicide." This language follows and is a *resume* of the instructions of the court with reference to unlawful homicide. The question of insanity is elsewhere treated of, and considering the whole charge, it cannot be presumed that the language of the court was understood by the jury to mean that the volition of an insane man rendered him liable to punishment. "We must take the charge together, and if, without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issues tried, we will not disturb the judgment because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text." (*People* v. *Doyell*, 48 Cal. 93.)

Defendant asked the court to charge: "If the defendant had been told of threats made by deceased towards him . . . . then defendant *had a right* to arm himself when he went to the Police Court," etc. The court properly refused the offered instruction. It was for the jury to determine from the evidence whether defendant was justified in arming himself and in using his arms.

On the application of defendant the deposition of one Lenora Beauteris — a witness too ill to appear in court — was taken on behalf of defendant. Defendant was not present when the deposition was taken. The witness was sworn by the clerk and her testimony taken by questions, propounded by the respective counsel, and answers thereto. The deposition was introduced in evidence by defendant. Defendant now contends in this court that the judge below, of his own motion, should have excluded the deposition, and that his failure to do so was error, for which a new trial should be granted.

Defendant's proposition is that a deposition cannot be used in a case of homicide, because of section 13 of article 1 of the Constitution of the State. The section reads:—

"In criminal prosecutions in any court whatever the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense; nor be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty, or property without due process of law. The legislature shall have power to provide for the taking in the presence of the party accused and his counsel of depositions of witnesses in criminal cases other than cases of homicide, where there is reason to believe that the witness, from inability or other cause, will not attend at the trial."

The section, with the exception of the last clause, relates to the privileges of persons accused of crime. "In criminal prosecutions the party accused *shall have the right*," etc. He shall not be twice put in jeopardy for the same offense; he shall not be compelled to be a witness against himself, nor be deprived of life, liberty, or property "without due process of law." There

can be little doubt that the right ¦to due process of law would include the common-law right to be confronted by his witnesses. To prevent misunderstanding, however, the framers of the Constitution added: "The legislature shall have power to provide for the taking *in the presence of the party accused* and his counsel, of depositions of witnesses in criminal cases other than cases of homicide, when there is reason to believe that the witness, from inability or other cause, will not attend at the trial." It may be that by reason of the exception depositions cannot now be used *against* the defendant in cases of homicide, even although they are taken in the presence of the party charged with that crime, and with full opportunity for cross-examination. But in other cases the legislature may authorize depositions to be taken on the part of the prosecution. Inasmuch, however, as the tenor of the provision of the Constitution clearly shows, with the exception noted, that is was intended for the protection of defendants, there is no prohibition upon the power of the legislature to authorize the taking of depositions by the *defendant* in every class of criminal cases. In this view of the question it is not necessary to inquire how far the constitutional privileges accorded to defendants charged with crime may be waived by them.

A witness, Morrison, after testifying he had a conversation with the wife of defendant, said: "I told Joe (defendant) about the conversation I had with his wife, *in which she promised she would be good and do what was right.*" He was asked by the defendant: "State now the conversation you had with her." To this question the prosecution objected, on the ground that the question called for incompetent and hearsay testimony. The court sustained the objection. Counsel for defendant then asked: "Now state any conversation you had with her before she went away, in which she made any admission to you of her adultery with Estuardo." A like objection was sustained to the last question.

If the record showed that the witness had testified he had communicated to defendant a conversation with his wife in which "she made any admission of her adultery" with deceased, we would be inclined to hold the court below erred in sustaining the objections to the questions. But the witness had only

stated that he told defendant about a conversation in which "she promised she would be good and do what was right." It is manifest that any statement she may have made to the witness not made known to defendant, could not have had any tendency to overthrow his reason.

Defendant asked the court to charge the jury:—

"It is proper for the jury to take into consideration the statements made to him of the seduction of his wife by the deceased as proper for you to consider in arriving at a conclusion as to whether he understood and was legally responsible for the killing; also to aid you in arriving at a conclusion as to whether the act was premeditated or done with malice." Also,—

"If you believe defendant in truth and in fact when he killed deceased believed deceased had seduced his wife, while it is in itself no excuse or sufficient provocation to excuse murder if you believe he wholly understood and could control his act at the time of the homicide, yet it is proper for you to take into consideration in arriving at the degree of murder, if any, of which he may be guilty; also it is proper for you to take such testimony into consideration in fixing the punishment if you should find him guilty of murder in the first degree."

The court in its general charge said: "Evidence of information given defendant that improper conduct or relations had occurred between defendant's wife and deceased is to be considered only as affecting the defendant's mental condition."

The court also charged very fully with respect to the subject of insanity, in language as favorable to defendant as he was entitled to have used. (Charges asked by defendant. Nos. 7, 12, 17, 22, 23, 24, 25, 26, 27, 28, 29, 35, 36.)

We cannot say the action of the court in refusing the instructions above quoted demands a reversal of the judgment or a new trial. The first of the two instructions assumes that statements were made to defendant "of the seduction of his wife by deceased." While we would not always and necessarily hold a charge erroneous which should assume a fact to be proven, if from the immediate context, or elsewhere in the instructions, it appeared that the existence or non-existence of the fact was left to be determined by the jury, we will not say that the rejection of such a charge is erroneous. Moreover, the word "seduction"

implies more than illicit intercourse between deceased and defendant's wife. A jury might well believe a husband would more probably be rendered insane by the act of one who should deliberately entice the wife from the path of duty — who should by arts and solicitation persuade her to sacrifice her chastity — than by her voluntary and unsolicited surrender of her person. It was for the jury to decide whether any statements were made to defendant with respect to an adultery committed with deceased, and to decide whether such statements showed that she had been seduced.

Nor did the court err in refusing the last of the two instructions above quoted. If defendant "believed deceased had seduced his wife" (and retained the possession of his reason so as to be responsible for his act), the circumstance might furnish a motive for the crime, but it could not of itself tend to reduce the crime to murder of the second degree; or, in other words, it could not tend to neutralize the effect of the circumstances which tended to establish that the killing was done with the express malice or predetermination to take life, which constitutes murder of the first degree. While any fact in evidence may be considered by the jury in fixing the punishment where a defendant is found guilty of murder of the first degree, yet the court below was called on to give or refuse the offered instruction as a whole, and did not err in rejecting the whole when, as we have seen, part was objectionable.

Judgment and order affirmed.

Ross, J., McKee, J., Myrick, J., Sharpstein, J., and Thornton, J., concurred.