[Crim. No. 177. Department Two.—November 21, 1896.]

## THE PEOPLE, RESPONDENT, *v.* CESARE CRESPI, APPELLANT.

CRIMINAL LAW—CRIMINAL LIBEL—PRELIMINARY EXAMINATION—JURISDIC-
TION OF POLICE COURT AND JUDGES.—The police court of the city and
county of San Francisco, and police judges sitting as magistrates, have
jurisdiction to hold a preliminary examination of a defendant charged
with the offense of criminal libel, although the police court has no juris-
diction to try that offense.

ID.—MAGISTRATES—SOURCE OF AUTHORITY—JURISDICTION.—Magistrates,
as defined and enumerated in the Penal Code, including police judges
in towns and cities, derive their powers and jurisdiction from the con-
stitution, operating with the acts of the legislature upon the subject;
and judges, when sitting as magistrates, have the jurisdiction and pow-
ers conferred by law upon magistrates, and not those which pertain to
their respective judicial offices.

ID.—EXAMINATION OF COMPLAINING WITNESS BY DEFENDANT—CONSPIRACY
—IMPEACHMENT.—Where part of the libelous matter charged was that
the complaining witness, who was a newspaper editor and proprietor,
was paid by a dishonest and dishonorable cabal or confederation of
Italians, known as "the *Camorra*," to libel and vilify certain people, and
such complaining witness was called to the stand as a witness for the
defendant, and asked, with specifications of time, place, and persons
present, if he had not stated that he had instituted the prosecution of
the defendant at the instance of others, to which he answered that he
had not, the defendant cannot be permitted to impeach his own witness
by proof that he had made such statement.

ID.—DISHONEST CHARACTER OF CAMORRA—CONSPIRING DRUGGISTS—RE-
BUTTING EVIDENCE—TESTIMONY OF PHYSICIAN.—Where, for the pur-
pose of showing the dishonest character of the *camorra*, with which
the complaining witness was stated to have conspired, evidence was
introduced to show the improper making of money by druggists of the
city who were connected with the *camorra*, and with a benevolent
society controlled by it, through the furnishing of inferior medicines, it
is proper rebutting evidence to show by a practicing physician of the
same city, that he knew nothing of the use of inferior medicines, and
that in his practice no complaints had been made to him thereof, and it
is no objection that he was not connected with the benevolent society,
or with either of the parties to the controversy, or that his evidence
was of slight importance, the value or weight of it being for the jury
alone.

ID.—FAMILY OF COMPLAINING WITNESS—HARMLESS RULING.—The admis-
sion of testimony of the prosecuting witness that he was a married man,
and the father of a family, it seems might be allowed, as affecting his
credibility before the jury, and, in any event, could have done defend-
ant no harm.

ID.—INSTRUCTION—OBJECT OF LAW PUNISHING LIBEL—PREVENTION OF
BREACH OF PEACE.—An instruction to the effect that a public prosecu-
tion for libel is conducted for public purposes; that the publication of a

libel has a tendency to provoke a breach of the public peace, which the law is solicitous to maintain and preserve; that persons feeling themselves injured by such publications are incited, in many instances, to seek satisfaction by personal violence inflicted upon the supposed libeler; and that it is the precautionary policy of the law, in the interest of the preservation of the peace of society, to discourage such violent remedies involving a breach of the peace, and the law has therefore provided for the punishment of the libeler, as being one who wantonly puts the public peace at hazard by printing and publishing untrue and malicious attacks on private character—is a clear and correct exposition of the law and the cause of its existence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. WILLIAM T. WALLACE, Judge.

The facts are stated in the opinion of the court.

*Van Ness & Redman*, for Appellant.

The court did not have jurisdiction to try defendant, as his examination was without authority of law. (Const., art. I, sec. 8; Stat. 1893, sec. 2; Pen. Code, secs. 17, 249, 1012, 1181; Cooley's Constitutional Limitations, 5th ed., 494; Bishop's New Criminal Procedure, sec. 123; *Doyle* v. *State*, 17 Ohio, 222; *United States* v. *Rogers*, 23 Fed. Rep. 658; *Dicks* v. *Hatch*, 10 Iowa, 380; *Rainey* v. *State*, 19 Tex. App. 481.) The conviction of defendant upon an unauthorized information, and without indictment, was without due process of law. (U. S. Const., 14th amend.; *People* v. *Supervisors*, 70 N. Y. 228; *Taylor* v. *Porter*, 4 Hill, 140; 40 Am. Dec. 274.) Defendant had a right to assume that witness Almagia would testify truthfully and in line with his previous statement, and, having failed to do so, it was the right of defendant to show that, upon another occasion, he had made statements inconsistent with his testimony. (Best's Practice, Evidence, sec. 645; Code Civ. Proc., secs. 2049, 2052.) The court erred in charging the jury that the tendency of the publication of a libel was to provoke a breach of the public peace, as it tended to induce a belief in the minds of the jury that the pub-

lication was necessarily libelous.   (*People* v. *Travers*, 88 Cal. 233.)

*W. F. Fitzgerald, Attorney General, W. H. Anderson, Assistant Attorney General,* and *Henry E. Carter, Deputy Attorney General,* for Respondent.

Where the record does not show the contrary, the court must presume that some duly qualified magistrate had, previous to the trial in the superior court, properly committed the defendant for such trial.   (*People* v. *Williams*, 84 Cal. 616; *Visher* v. *Webster*, 13 Cal. 60; *Wheeler* v. *Farmer*, 38 Cal. 210; *People* v. *O'Leary*, 77 Cal. 30.)   Even were the facts claimed by counsel for appellant, disclosed by the record, the objection is not well founded.   (Pen. Code, secs. 807–09, 872; stats. 1893, p. 9.)   The court properly sustained the objection to the question asked witness Pietro, as it was immaterial and irrelevant, and was asked for the purpose of laying a foundation to impeach the witness Almagia.   (*People* v. *Ah Who*, 49 Cal. 32; *People* v. *Jacobs*, 49 Cal. 384; *People* v. *Mitchell*, 94 Cal. 556.)

Henshaw, J.—The defendant, convicted of criminal libel in the superior court of the city and county of San Francisco, appeals from the judgment and from the order denying him a new trial.

The trial was had upon information filed in the superior court after examination held in the police court of said city and county.

1. Appellant contends that his examination was without authority of law, and that therefore jurisdiction was never acquired by the superior court.   This is based upon the provisions of the act of 1893, relative to the police court of San Francisco.   (Stats. 1893, p. 9.)

Section 2 of that act declares:

" Sec. 2.   The police court of the city and county of San Francisco shall have jurisdiction: 1. Of all violations of city ordinances or orders of the board of supervisors of the city and county of San Francisco; 2. Of all misdemeanors punishable by fine not exceeding one

thousand dollars, or by imprisonment not exceeding one
year, or by both such fine and imprisonment; 3. Of all
examinations of felonies committed in the city and
county of San Francisco; 4. Said court or any judge
thereof, shall have the same powers in all criminal ac-
tions, cases, examinations, and proceedings as are now
or are hereafter conferred by law upon justices of the
peace."

From the foregoing, it is argued that the police court
has no jurisdiction to try this particular kind of misde-
meanor, for which the maximum penalty exceeds one
thousand dollars fine and one year's imprisonment.
This is quite correct.

It is next insisted that, as the statute expressly au-
thorizes the police court to hold examinations in all
cases of felony, but makes no mention of examinations
for offenses less than felony, it must be construed as a
withholding of jurisdiction in this particular.

Notwithstanding the unreasonable and absurd an-
omaly which would result if the legislature should have
conferred jurisdiction upon the court to examine the
graver offense, and should have denied it power to in-
vestigate the lesser; still, if by oversight or intent such
an omission or hiatus in the law should be found to
exist, naught would be left for us to do but to recognize
the fact.

We think, however, that no such situation exists, and
this, aside from the contention of respondent that sub-
division 4 above quoted makes good any apparent de-
ficiency, and confers jurisdiction to hold examinations
in the case of misdemeanors like the one under consid-
eration.

At the time of the adoption of our present constitu-
tion, the criminal procedure was remodeled by that
instrument in one important particular.    Article 1, sec-
tion 8, provided that: " Offenses heretofore required to
be prosecuted by indictment shall be prosecuted by in-
formation after examination and commitment by a
magistrate, or by indictment with or without such ex-

amination and commitment, as may be prescribed by law."

Criminal libel was one of the crimes required to be prosecuted by indictment.

Magistrates are defined and enumerated in the Penal Code. (Pen. Code, secs. 807, 808.) Police judges in towns and cities are magistrates. It has been prescribed by law that all offenses formerlly cognizable only by indictment, may now be prosecuted either by indictment or by information filed after examination. The chapters and sections of the Penal Code, treating of the powers and duties of magistrates, make no distinction between the different judicial officers who may act in such capacity. Justices of the supreme court, judges of the superior court, justices of the peace and police judges, when sitting as magistrates, have the jurisdiction and powers conferred by law upon magistrates, and not those which pertain to their respective judicial offices. They derive their powers and jurisdiction from the constitution, operating with the acts of the legislature upon the subject. Therefore, if it should be held that the statute of 1893, relative to the police court of the city and county of San Francisco, did not confer jurisdiction upon the police judges to hold examinations in misdemeanors such as this, the oversight or deficiency is fully made good and repaired by the provisions of the constitution and of the Penal Code. It is the same jurisdiction, and drawn from the same source, as that conferred upon and used by justices of the peace. In the section defining their criminal jurisdiction (Code Civ. Proc., sec. 115) no authority whatever will be found for the holding by them of examinations, either upon felonies or misdemeanors. They derive it, as do police judges, from their character, not of justices of the peace, but of magistrates.

2. A part of the libelous matter was a published charge that the complaining witness, Almagia, himself a newspaper editor or proprietor, was paid by "the *Camorra*" to libel and vilify certain people. By *camorra*,

is understood to have been meant a clique, ring, cabal, or
confederation of Italians in the city banded together for
dishonest and dishonorable purposes. Defendant un-
dertook to prove the existence of this *camorra,* and Al-
magia's connection with it. He called Almagia to the
stand as his own witness, and asked him, with specifi-
cations of time, place, and persons present, if he had
not stated that he had instituted the prosecution of de-
fendant at the instance of others. Almagia answered
that he had not. Defendant then sought to impeach
him by showing that he had made this statement. The
court refused to admit the impeaching evidence. This
ruling is complained of. It was clearly right. It was
an attempt by a party to impeach his own witness, not
because that witness had given hostile evidence which
had taken him by surprise, but because he did not ad-
mit what was sought to be elicited from him. Indeed,
he was apparently questioned for the sole purpose of
impeachment. Such practice is not permissible. (*Peo-
ple* v. *Jacobs,* 49 Cal. 384; *People* v. *Mitchell,* 94 Cal. 556.)

3. In connection with the statement of defendant con-
cerning the relation of the prosecuting witness to the
so-called *camorra,* and for the purpose of showing the
dishonest character of such *camorra,* evidence was in-
troduced by the defendant to prove the control by the
*camorra* of the Italian Benevolent Society of San Fran-
cisco, and the improper making of money, out of that
society, by druggists who were connected with both the
society and the *camorra.* It was sought to be shown
that the druggists referred to were realizing dishonest
profits out of the improper putting up of prescriptions
ordered by or through the benevolent society, and, to
this end, witnesses were called who testified that various
persons had complained that medicines obtained from
druggists who were alleged to be members of the *ca-
morra* had been barren of beneficial result, while med-
icines obtained upon the same prescriptions from other
druggists, not members of the *camorra,* had proved effica-
cious in effecting the results for which intended. In

rebuttal of this testimony the prosecution called as a witness, Joseph Pescia, a physician practicing his profession in the city and county of San Francisco. Dr. Pescia, over the objection and exception of defendant, was allowed to testify that he knew nothing personally of the use of inferior medicines, and that in his practice no complaints had been made to him.

The point is made that these rulings of the court were erroneous, because it was not shown that Dr. Pescia had any relation with the benevolent society, or any of the parties to the controversy, which would render his testimony of any value upon the matter. That may well be, but the complete answer is that the value or weight of the testimony was for the jury alone. It would certainly have tended to disprove the charge, if in rebuttal the prosecution had called all of the practicing physicians of San Francisco to give like evidence. That they called but one affects the weight to be given to that one's testimony by so much as it fails to establish a perfect rebuttal, but the evidence was none the less admissible, even though of slight importance.

4. Almagia was allowed to testify that he was a married man, the father of a family. The admission of this fact is complained of. True, the evidence tended neither to prove nor disprove the criminal charge, but if it be so that "he that hath wife and children hath given hostages unto fortune," then the fact might affect his credibility before the jury, and, in any event, could have done defendant no harm.

5. In advising the jury the court spoke as follows: "It is proper to remind you that this is not an action brought by Almagia against Crespi to recover damages for injuries or supposed injuries sustained by the alleged libel; it is not a private but a public prosecution conducted by the people of the state purely for public purposes. *The publication of a libel has a tendency to provoke a breach of the public peace, which the law is solicitous to maintain and preserve. Persons feeling themselves injured by such publications are incited, in many instances,*

*to seek satisfaction by personal violence inflicted upon the supposed libeler.* It is the precautionary policy of the law, in the interest of the preservation of the peace of society, to discourage such violent remedies involving a breach of the peace, and the law has therefore provided for the punishment of the libeler as being one who wantonly puts the public peace at hazard by printing and publishing untrue and malicious attacks on private character."

The defendant detaches the italicized portion and complains of it. But neither segregated nor with its context do we perceive anything in this language but a clear and correct exposition of the law, and the cause of its existence.

The judgment and order appealed from are affirmed.

TEMPLE, J., and McFARLAND, J., concurred.