[Crim. No. 5275.  In Bank.  June 20, 1952.]

THE PEOPLE, Respondent, v. VERNON LeBEAU, Appellant.

Thomas L. Berkley, Joseph G. Kennedy, Clinton Wayne White and Charles E. Wilson for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, J. Frank Coakley, District Attorney (Alameda), and Vernon L. Goodin, Deputy District Attorney, for Respondent.

GIBSON, C. J.—Vernon LeBeau was convicted of possessing narcotics in violation of section 11500 of the Health and Safety Code, and he appeals from the judgment and an order denying his motion for a new trial. Defendant does not contend that the evidence is insufficient to support the verdict, but he claims that the court erred in admitting evidence and in permitting the prosecution to impeach its own witness.

A police officer testified that he searched defendant's room and discovered two capsules of cocaine in the pocket of a jacket which defendant admitted was his. LeBeau took the stand in his own defense and testified on direct examination that he had not seen the capsules before the officer discovered them, that he never had narcotics in his possession, "wouldn't know narcotics," and had "never been in contact with any of them." On cross-examination defendant was asked without objection if he had not been using narcotics for many years prior to his arrest, and he answered that he had not. He was then questioned as follows: "Q. You are acquainted with Nancy Teeples, known as Nancy McDowell? A. I know Nancy. Q. Do you know who I am referring to? A. Yes, I do. Q. Isn't it a fact that on several occasions you have told her that you used cocaine? A. No, I never told anybody I used cocaine." The prosecution called Nancy McDowell in rebuttal and asked if defendant had not told her that he used cocaine. She replied, "No." She was asked if she did not recall making a statement in the district attorney's office that LeBeau had told her on several occasions that he used cocaine. Mrs. McDowell replied "I don't believe that I stated anything that definite. I may have stated that from conver-

sations that I have witnessed that the defendant talked about cocaine. Whether he used it, I would not know, and I have already told you that.'' She testified later that she had heard defendant ''talking about cocaine.''

The prosecution claimed surprise and called a police inspector who testified that Mrs. McDowell, when questioned in the district attorney's office before the trial, had said that defendant had told her that he used the drug. Mrs. McDowell was recalled by the prosecution, and, over defendant's objection, she testified that she remembered making a statement in the district attorney's office, but that she had not used the words attributed to her by the inspector.

■ There is no merit in defendant's contention that the court erred in admitting the testimony of Mrs. McDowell because it was immaterial and tended to show commission of another offense. Defendant testified on direct examination that he ''wouldn't know narcotics'' and had had no contact with them. Mrs. McDowell's testimony indicated that he had some knowledge of cocaine. It did not, however, tend to show the commission of another offense.

Defendant also contends that the court erred in permitting the prosecution to impeach Mrs. McDowell. ■ It is well settled that a party may impeach his own witness by the use of prior inconsistent statements where he has been surprised and damaged by the witness' testimony. (See Code Civ. Proc., §§ 2049, 2052; *Rystinki* v. *Central Calif. T. Co.*, 175 Cal. 336, 342 [165 P. 952]; cf. *People* v. *Newson*, 37 Cal.2d 34, 41 [230 P.2d 618]; *People* v. *Sliscovich*, 193 Cal. 544, 553-554 [226 P. 611].) No question is raised on this appeal as to surprise, and the sole problem to be determined is whether Mrs. McDowell's testimony prejudiced the People's case and warranted her impeachment.

In support of his claim that Mrs. McDowell's testimony was not damaging, defendant relies on *People* v. *Newson,* 37 Cal. 2d 34 [230 P.2d 618]. In that case defendant was charged with murder and a witness for the prosecution was asked on direct examination if at the time of the crime she had seen anyone in a building where the killing had occurred. She replied ''No, I didn't.'' Over objection, the district attorney was permitted to impeach the witness by proving her prior extrajudicial statements that she had seen defendant in the building at that time. The admission of her prior inconsistent statements was held to be error on the ground that her testimony ''was purely of a negative character . . . neither favor-

able to one side nor the other,'' and was in no way damaging to the prosecution's case.  (37 Cal.2d at p. 44.)

The Newson case did not, of course, purport to lay down a rule that all negative answers are harmless, and it is necessary to determine on the facts of each case whether the testimony of the witness sought to be impeached has actually damaged the party calling him.  ■  Here we are satisfied that the witness' answer was more than a harmless refusal to testify as expected and that it prejudiced the People's case. Mrs. McDowell was placed on the stand by the prosecution for the purpose of impeaching defendant's credibility and rebutting his testimony that he did not use narcotics.  Her denial that defendant had ever told her that he used cocaine was likely to make it appear to the jury that the district attorney was harassing defendant and attempting to discredit him without any basis in fact by asking him on cross-examination if he had not told Mrs. McDowell that he used the drug.  This impression might well have been aggravated in the jurors' minds by the fact that the subject of defendant's use of narcotics was brought into the case by defendant himself.  Under the circumstances the prosecution was entitled to correct this damaging impression by cross-examining its own witness and by impeaching her with proof of her prior inconsistent statements.

Other contentions made by defendant are so entirely without merit that they need not be discussed.

The judgment and order are affirmed.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

It is here held by the majority that the State may impeach its own witness by another witness on the basis of a claimed prior contradictory statement, even though the answer of the impeaching witness was not damaging or adverse to the prosecution.  That result is reached by a process of reasoning that otherwise the state could be accused of harassing defendant by asking questions about prior contradictory statements without any basis—without showing that such statements had been made.  This is directly contrary to *People* v. *Newson*, 37 Cal.2d 34 [230 P.2d 618], and other decisions of the court and the District Court of Appeal.  The rule is thus stated in

the Newson case: ". . . [T]he prior statements inconsistent with the witness' present testimony *can only be considered for the purpose of neutralizing and counteracting the effect of his statements upon the trial.* The purpose of the statute is to allow a party to wipe out, as nearly as possible, the evidence which has been given. *Where a witness states no fact against the party calling him, there is nothing to counteract.* The *testimony* which may be contradicted must be *prejudicial and detrimental,* otherwise the previous statement shown would stand out, not as offsetting contrary testimony already given, but as substantive evidence of a fact." (Emphasis added.) In this case the "no" answer to the inquiry of whether defendant had told the witness, Nancy Teeples, that he was a narcotic addict, was in no way damaging or adverse to the State or beneficial to the defendant. No "fact against" the State was stated by the witness. Hence there was nothing to "counteract." Indeed, the prior statement, claimed to be contradictory, would "stand out, not as contradictory testimony already given, but as *substantive* evidence of the fact," which, of course, is not proper.

The majority opinion seeks to escape the holding in the Newson case, *supra,* by stating that the State had the right to counteract the impression that it was harassing defendant when it asked him whether he had made such a statement to the witness. Thus the State is permitted to lift itself by its own bootstraps. It is permitted, by the device of first putting the question to the defendant, to make the evidence of the impeaching witness stand out as substantive evidence. The effect is that little is left of the Newson case rule because it may easily be avoided by the prosecution by the simple method here used. Moreover, the State will always be able to claim that it is prejudiced in the eyes of the jury because it has called a witness who does not testify as expected, thus indicating bad faith on its part. If it may "counteract" that effect by calling the impeaching witness, then there is nothing left of the Newson case rule. Under that rule, as appears from the foregoing quotation, the *only* thing the person calling the witness may counteract is the *testimony* of the witness which damages him. He *cannot* "counteract" an unfavorable impression that may be made when such impression does not come from the witness sought to be impeached.

In *People* v. *Mitchell,* 94 Cal. 550 [29 P. 1106], it was held error to impeach a witness by former testimony where on the stand he said he had not said a certain thing. The court said

(p. 556): "A witness, whichever party calls him, cannot be impeached unless he has given testimony against the impeaching party. This witness had not testified against the prosecution. He simply failed to testify to a fact which the district attorney thought he could prove by him. . . . The impeaching statements were evidently desired as evidence. If such testimony were admissible, it would be *easy to manufacture evidence of that kind.* If a witness merely fails to testify as expected, that does not authorize the party calling him to prove that the witness had elsewhere made the desired statements. It is only when he has given damaging testimony that he can be impeached." (Emphasis added.) In *People* v. *Creeks,* 141 Cal. 529 [75 P. 101], the facts were closely analogous. A witness for the prosecution, defendant's mother, did not live up to the prosecution's expectations and said she did not know what shoes defendant was wearing on the day of the crime (a vital matter as footprints were involved). It was held error to permit her impeachment by her testimony at the preliminary hearing that the shoes in question were worn. She had been asked if she had made such contradictory statements exactly the same as in the instant case. The court said (p. 531): "The evidence (given at the preliminary) *was incompetent for any purpose.* . . . The testimony was sought to be elicited solely for the purpose of getting before the jury statements made by the mother in a prior occasion, tending to make out the case of the people. Where a witness called by a party has simply failed to testify to all that party expected or desired, but has not given *testimony against* him, it is not permissible for the party calling him to prove that such witness had previously made statements which if sworn to at the trial, would tend to make out his case. As was said by Mr. Justice McKinstry in *People* v. *Jacobs,* 49 Cal. 384, 'To admit the proof of such statement would enable the party to get the naked declaration of the witness before the jury as independent evidence.' That such testimony is not authorized by the provisions of sections 2049 and 2052 of the Code of Civil Procedure was squarely held in *People* v. *DeWitt,* 68 Cal. 584, 588 [10 P. 212]. The decisions of this court uniformly hold such testimony objectionable. (See *People* v. *Jacobs,* 49 Cal. 384; *People* v. *DeWitt,* 68 Cal. 584, 588 [10 P. 212]; *People* v. *Wallace,* 89 Cal. 158, 164 [26 P. 650]; *People* v. *Mitchell,* 94 Cal. 550, 566 [29 P. 1106]; *In re Kennedy,* 104 Cal. 429, 431 [38 P. 93]; *People* v. *Conkling,* 111

Cal. 616, 624 [44 P. 314] ; *People* v. *Crespi,* 115 Cal. 50, 55 [46 P. 863].)

"Upon this subject, this court has never gone further than to hold that where a witness called by a party has given damaging testimony against him—as, for instance, if the mother had here affirmatively testified that defendant did not wear the shoes when he left her home—the party calling him may show that the witness previously made statements inconsistent with his present testimony, and this ruling is apparently upon the theory that the party was surprised by the adverse testimony given by his own witness." (Emphasis added.) A similar situation was presented in *People* v. *Sliscovich,* 193 Cal. 544, 553 [226 P. 611], and the court there said: "While it is true that under the provisions of section 2049 of the Code of Civil Procedure a party producing a witness may show that the witness had made statements at other times inconsistent with the testimony as given upon the witness-stand, still the privilege permitted by this section may not be invoked on every occasion. The purpose of the provisions of this section is to permit a party who has, in good faith, produced a witness upon the stand in the belief that the witness will give certain testimony in support of the party calling him to show that prior to being called to the witness-stand the witness made statements which, if admitted in evidence, would have been favorable to the party calling the witness. But to entitle a party to contradict his own witness by showing statements elsewhere made and contrary to those made upon the witness-stand, *it must appear not only* that the party was surprised by the testimony of the witness, but that such *testimony* was *prejudicial* to the case of the party calling the witness. Therefore, the mere failure of a witness to testify favorably for the party calling him, unaccompanied by any *testimony* which would tend to the prejudice of the case of the party calling the witness, will not entitle such party to show that the witness has elsewhere made contrary statements concerning the facts sought to be elicited from him. The witness in the instant case not having testified to anything that was prejudicial to the defendant and the defendant's case, the defendant was not privileged to invoke the provisions of the code section last above referred to." (Emphasis added.) (To the same effect are *In re Kennedy,* 104 Cal. 429 [38 P. 93] ; *People* v. *Crespi,* 115 Cal. 50 [46 P. 863] ; *People* v. *Cook,* 148 Cal. 334 [83 P. 43] ; *Estate of Dolbeer,* 153 Cal. 652 [96 P. 266, 15 Ann.Cas. 207].)

The majority opinion in the instant case cannot be reconciled with any of those authorities. It does not cite or attempt to distinguish any of them except the Newson and Sliscovich cases which are clearly indistinguishable.

It is clear that the ruling was prejudicial because the evidence admitted painted defendant as a depraved person—a narcotic addict. On that basis alone the jury may well have found him guilty.

I would, therefore, reverse the judgment.

SCHAUER, J.—I concur in the reasoning and conclusion of Justice Carter.